Heizer v. Kingsland & Douglass Mfg. Co.

HEIZER v. KINGSLAND & DOUGLASS MANUFACTURING COMPANY, *Appellant.*

110 605
d88a 205

Division One, June 20, 1892.

1. **Contract:** PRIVITY: TORT. Where a cause of action in tort arises from a breach of contract there must be some privity between the defendant and the person injured.

2. **Negligence:** SALE OF DANGEROUS MACHINERY: INJURY TO THIRD-PERSON. A manufacturer is not liable for the explosion of a cylinder of a steam threshing machine sold by him, whereby an employe of the vendee is killed, where it is not shown that the manufacturer knew of the dangerous condition of the cylinder.

*Appeal from Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED.

*Hitchcock, Madill & Finkelnburg* for appellant.

(1) Plaintiff's husband was not a party to the contract for the sale of the thresher and its violation could give her no right of action. By the decided weight of judicial opinion hitherto expressed, and by the reasonable and practicable limits which must, in the nature of things, be assigned by the courts to the principle creating a liability, independent of contract, and as the mere result of legal duty, for injuries occasioned by articles dangerous in their nature and intended use, the thresher in this case cannot be classed with poisons, gunpowder and like articles. The rule applicable to them does not apply to it. *Roddy v. Railroad,* 104 Mo. 234; *Winter-bottom v. Wright.* 10 Mees. & W. 109; *Thomas v. Winchester,* 6 N. Y. 397; *Loop v. Litchfield,* 42 N. Y. 351; *Losee v. Clute,* 51 N. Y. 494; *Bank v. Ward,* 100 U. S. 204; *Necker v. Harvey,* 49 Mich. 517; *Gordon v. Livingston,* 12 Mo. App. 267; Wharton on Negli-

gence, sec. 440. Defendant's instruction for a nonsuit asked at the close of plaintiff's case in chief, and again at the conclusion of the evidence, should have been given.

*H. S. Priest* and *George Robertson* for respondent.

(1) The plaintiff's petition is not based upon any claim that the contract was made with her or her husband, unless it may be said that the purchaser of such machinery is in one sense contracting for his employes who will operate the machine as well as himself. From the nature of the machinery, the fact that a number of men in the employ of the purchaser will operate it, and that such facts are contemplated by the manufacturer when making and selling such machinery, it may be reasonably claimed that the contract of sale, warranties therein and representations as to the use of the machinery are not other than representations made indirectly to the user. 1 Thompson on Negligence, 234, and cases there cited. (2) The point that the cause of action presented in the petition was abandoned by the plaintiff's instruction is not well taken. The petition in addition to charging knowledge on the part of defendant of defective machinery also charges negligence in constructing and selling a defective machine. Instruction, numbered 1, given at defendant's request, put the case to the jury upon the same facts and theory identical with those of the plaintiff. "Where a party has asked similar instructions to those given he is in no position to complain. *Whitmore v. Supreme Lodge,* 100 Mo. 47, and many other cases there cited. The petition is good after verdict. (3) The ground upon which defendant's liability is placed by the plaintiff's instructions is that in the sale of the defective thresher, which from its construction was dan-

gerous while being operated if improperly constructed or constructed from defective material, is a breach of duty aside from contract by the defendant toward anyone using the thresher for the purposes for which it was manufactured and sold. "Sometimes," says Whitaker's Smith on Negligence, page 9, *et seq.*, "however, when there has been a breach of contract towards the contracting party, there has been a breach of duty towards a third person not privy to the contract, and such breach of duty is actionable." See supporting this view *Heaven v. Pender*, Q. B. D. 506, given in full in the note to Whitaker's Smith on Negligence, page 12, *et seq.* "It is negligence to send into the community a thing liable to be used by persons ignorant of its nature to their injury, and if one not himself chargeable with negligence receives harm from it he has his action against the sender." Bishop on Non-Contract Law, secs. 413, 483. As sustaining the plaintiff's claim, her instructions and the theory upon which her case was presented to the jury we cite the following text-writers: Bishop on Non-Contract Law, secs. 413, 483; Whitaker's Smith on Negligence, p. 9, *et seq.;* 1 Thompson on Negligence, 232, *et seq.;* 2 Sutherland on Damages, 435, 436; Shearman & Redfield on Negligence, sec. 54; Cooley on Torts [2 Ed.] 562, 583. And the following cases: *Thomas v. Winchester*, 6 N. Y., and similar cases; *Heaven v. Pender, supra; Lampert v. Gaslight Co.*, 14 Mo. App. 376; *Godley v. Hagerty*, 20 Pa. St. 317; *Devlin v. Smith*, 89 N. Y. 470; *Roddy v. Railroad*, 104 Mo. 234.

BLACK, J.—The plaintiff brought this suit against the defendant, a corporation engaged in manufacturing and selling steam threshing machines, to recover damages for the death of her husband, who received

injuries from which he died while assisting Ira Ellis in operating a machine sold by defendant to Ellis.

Mr. Ellis applied to a Mr. McSwain, who was an agent for the Birdsell thresher, for a machine of that pattern. They went to St. Louis, but being unable to get a machine of that make they called at the defendant's shops. Ellis then gave the defendant a written order for a machine, by the terms of which defendant warranted it to be of good material and workmanship, and agreed to supply any parts which might fail during a specified time, free of charge. Though McSwain was not an agent for the defendant, still defendant agreed to pay him $25 for furnishing a purchaser, and he agreed with Ellis to start the machine. It was shipped to Ellis in due time, and he and his men used it for threshing oats on Saturday and Monday, McSwain assisting them on Saturday. On Tuesday morning the cylinder flew into pieces, one of which struck Heizer above the eye, inflicting the injuries from which he died. Heizer was assisting Ellis in operating the machine. So far there is no dispute as to the facts.

The petition states, among other things, that defendant knew, when it constructed the machine, it would be used and operated by a number of persons in the employ of the persons to whom it should be sold; that defendant, in selling the machine to Ellis, warranted the same to be free from defects and of first-class material; that the cylinder was made of poor material, was defective in construction, and was too weak to stand the ordinary strain; all of which defects were known to the defendant's agents at the time of the sale; and that the machine gave way and flew into pieces by reason of such defects, etc.

The evidence on the issue as to whether defendant made, or should be deemed the maker of, the machine is, in substance, this: The Kingsland &

Ferguson Manufacturing Company, a corporation, made this machine in 1886, and went into liquidation in 1887, at which time the defendant was organized. The defendant then purchased this machine and the material of the old company then on hand and continued to manufacture the same machines, and in August, 1888, sold this one to Ellis. Though this machine was made by the old company, still the contract of sale does not state by which company it was made, and there is evidence that the following words were printed on it: "Kingsland & Ferguson Thresher, made by Kingsland & Douglass Manufacturing Company."

From the further evidence it appears that the cylinder, located in the front part of the thresher, was composed of a shaft which passed through "two outside and two inside heads." The outside heads were of solid cast iron. There were eight wrought iron cross bars extending from one to the other outside head, with four wrought iron bands around the bars. The teeth were set in the cylinder so as to pass between rows of teeth set in a concave which rested in grooves and could be removed when desired. The concave had been removed just before the accident, and after it had been replaced and some grain threshed Heizer took his place at the footboard, and had commenced or was about to commence feeding, when the cylinder gave way while revolving at full speed.

The evidence of several witnesses who were working at the machine is to the effect that nothing but grain and straw got into it, while one witness for the defendant gives it as his opinion that some foreign substance must have passed into the cylinder. Other evidence is to the effect that wrenches, bolts and the like sometimes get into the straw, and thence into the

machine; but that the ordinary effect is simply to tear out some of the teeth. These witnesses say the bands and heads of the cylinder were broken into many pieces, and that the broken pieces of the heads indicated old cracks.

The plaintiff produced two expert witnesses whose evidence is to the following effect: That the bands were irregular in thickness, varying from three-eighths to three-sixteenths of an inch; that they had been cut too short and had to be drawn out; that the iron in them was of a poor quality for such use; that in one instance, at least, the weld united on one side only. These witnesses say the cast iron in the heads was of a low grade and contained earthy matter; that the broken pieces disclosed old cracks or places where the iron did not unite when molded; that the heads were thus weakened from forty to sixty per cent.; that an inspection of the heads before they broke would have disclosed the poor quality of the iron, but not the cracks or places where the iron did not unite; and that, in their opinion, the heads first gave way and the other breakage followed as a consequence.

The evidence for the defendant shows that this was one of one hundred or one hundred and twenty-five machines made in 1886; that they were all made out of like material; that with this exception they had all stood the test of practical use; that this machine was used daily during fair week at St. Louis in 1886, and again in 1887; that it had been twice tested, once when made, and again just before it was shipped to Ellis; that the tests consisted in putting all the parts of the thresher in motion for three quarters of an hour, with the cylinder revolving at the rate of twelve hundred and forty revolutions per minute. Mechanics, who made the cylinder, testified that the bands were purchased in large quantities, rolled and ready for use; that they

were of a good quality of iron, and that none of them broke at the welds. Their evidence is to the further effect that cylinder heads for a number of machines were made at the same time; that they were cleaned when molded, and those that showed any defects were cast aside; that they were again examined when bored. These and other witnesses say the iron in the cylinder heads in question was of a good quality.

On this state of the case the trial court refused to nonsuit the plaintiff, and of this ruling error is assigned. In considering this question we must treat the defendant as both manufacturer and vendor of the machine, since there is evidence tending to show that it sold the same as one of its own manufacture. The first question is, whether the defendant is liable to the plaintiff for simple negligence. If there is any such liability, it is because of a breach of duty owing by the defendant to the plaintiff's husband. If the defendant owed the deceased any duty whatever, that duty was created either, *first*, by the contract by which defendant sold the machine to Ellis, or, *second*, was a duty imposed by law upon defendant in addition to or independent of any mere contract duty.

There is no doubt but a cause of action in tort often arises from the breach of a duty created by contract, but in such cases there must be some privity of contract between the defendant and the person injured. There being no privity of contract the suit cannot be maintained. *Roddy v. Railroad*, 104 Mo. 234; *Winterbottom v. Wright*, 10 M. & W. 109; *Loop v. Litchfield*, 42 N. Y. 351; *Losee v. Clute*, 51 N. Y. 494; *Necker v. Harvey*, 49 Mich. 517; *Savings Bank v. Ward*, 100 U. S. 195; *Safe Co. v. Ward*, 46 N. J. L. 19; *Curtain v. Somerset*, 21 Atl. Rep. 244; *Gordon v. Livingston*, 12 Mo. App. 267; *Kahl v. Love*, 37 N. J. L. 8; Wharton on Negligence [2 Ed.] sec. 438. If

this rule of law applies to the case in hand, then it is clear the plaintiff cannot recover for negligence in making and selling the machine; for Heizer was in no way a party to the contract by which defendant sold the machine to Ellis. There is no privity of contract between the defendant and the deceased.

But in many cases the law imposes duties additional to those specified in the contract, and sometimes independent of it. Thus the relation of common carrier and passenger being created, the law casts upon the carrier the duty of using care, and in some instances the highest care known to the law. And still more to the point are those cases where the law casts a duty to use due care to third persons upon the manufacturer or vendor of dangerous goods, as in the case of poisonous drugs or explosive oils. *Thomas v. Winchester*, 6 N. Y. 397; *Norton v. Sewall*, 106 Mass. 143; *Wellington v. Oil Co.*, 104 Mass. 64; *Hourigan v. Nowell*, 110 Mass. 470; *Callahan v. Warne*, 40 Mo. 131. Smith says: "The true question always is, has the defendant committed a breach of duty, apart from the contract? If he has only committed a breach of contract he is liable to those only with whom he has contracted; but if he has committed a breach of duty he is not protected by setting up a contract in respect of the same matter with another person." Whitaker's Smith on Negligence, 10.

The difficulty in the practical administration of the law is to fix upon the dividing line between those cases where the duty begins and ends with the contract, and where the law imposes a duty to third persons notwithstanding the contract. A recital of the salient facts in some of the cases before noted will the better enable us to say to which class this case belongs.

In the leading case of *Winterbottom v. Wright*, *supra*, the defendant had contracted with the postmaster general to provide a mail coach for carrying the

mail bags, and to keep the coach in repair and fit for use. Other persons had a contract with the postmaster general to supply horses and coachmen for conveying the coach. The coach broke down and injured the driver by reason of the negligence of defendant in failing to keep it in proper repair and fit for use. It was held the plaintiff could not recover. Says Lord ABINGER: "There is no privity of contract between these parties; and, if the plaintiff can sue, every passenger, or even any person passing along the road, who was injured by the upsetting of the coach, might bring a similar action. Unless we confine the operation of such contracts as this to the parties who entered into them the most absurd and outrageous consequences, to which I can see no limit, would ensue." Speaking of cases not within the rule he says: "Those, however, are cases where the real ground of the liability is the public duty, or the commission of the public nuisance." For like reasons a declaration was held bad which alleged that defendant negligently hung a chandelier in a public house, knowing it would be likely to fall upon plaintiff and others unless properly hung, and that it fell upon and injured the plaintiff. *Collis v. Selden*, L. R. 3 C. P. 495. The principle is reasserted in *Heaven v. Pender*, L. R. 11 Q. B. D. 503.

In *Necker v. Harvey, supra*, the defendant manufactured and put up in the factory of a soap company an elevator, under a contract with the soap company that it would lift at least two thousand pounds. The elevator fell by reason of defective shaft in three days after it had been put in place, and injured a workman in the employ of the soap company. Judge COOLEY, speaking for the court, said: "The statement of facts so far makes out no cause of action in favor of this plaintiff. It discloses a duty on the part of the defendant to construct an elevator which should lift two thousand

pounds; but the duty was to the soap company, and not to anybody else. Nothing is better settled than that an action will not lie in favor of any third party upon a breach of this duty."

In *Losee v. Clute, supra*, it was held that the manufacturer and vendor of a steam boiler was liable only to the vendee for defective materials and want of care in its construction; and that the vendor was not liable to a third person for damages caused by an explosion on account of defective materials and construction.

The facts in *Curtain v. Somerset, supra* (Supreme Court of Penn. 1891), were these: A contractor erected a hotel building, and turned the same over to the hotel company. Thereafter an entertainment was given at the hotel by the proprietor. A crowd of persons collected on a porch, when a girder gave way, and one of the persons attending the entertainment was injured, and he brought suit against the contractor. The contractor, it was held, was not liable to the plaintiff, because he owed the plaintiff no duty whatever. Says the court: "The consequence of holding the opposite doctrine would be far reaching. If a contractor who erects a house, who builds a bridge, or performs any other work, the manufacturer who constructs a boiler, piece of machinery or a steamship, owes a duty to the whole world, that his work or his machine or his steamship shall contain no hidden defect, it is difficult to measure the extent of his responsibility, and no prudent man would engage in such occupations upon such conditions. It is safer and wiser to confine such liabilities to the parties immediately concerned."

Wharton thinks the better reason for the rule is, that there is no causal connection between the negligence and the hurt; but be this as it may, the rule itself is well established in England and in the United States, and we think the case in hand comes within it. It is

true the defendant must have known, when it made and sold the machine to Ellis, that other persons would be engaged in operating it; but this is no reason why defendant should be held liable to such other persons for injuries arising from the negligent use of poor material or for defective workmanship.  Such knowledge must have existed in the cases which have been cited as asserting the rule, and would have been as good an argument against the rule in those cases as in the case in hand.

We now turn to those cases where it is held that the vendor is liable for negligence to third persons, and *Thomas v. Winchester, supra,* is the leading one in the United States.  There the defendant, by his agent, put up a jar of belladonna, a deadly poison, and negli-gently labeled it dandelion, a harmless medicine.  He sold the jar thus labeled to one druggist who sold it to another.  The plaintiff's wife being ill, her physician prescribed dandelion, and the prescription was filled by the last-named druggist from the jar, and administered to her, by which she was injured.  The defendant was held liable for damages.  The case is made to stand chiefly on the ground that sending into the market the poison mislabeled put human life in imminent danger.

And in *Norton v. Sewall,* 106 Mass. 143, an apothecary, by his agent, sold a deadly poison as and for a harmless medicine to one person who purchased it for and administered it to a third person.  "This finding," says the court, "includes a violation of duty on the part of the defendant, and an injury resulting therefrom to the intestate for which the defendant was responsible, without regard to the question of privity of contract between them."  In these cases the articles sold were necessarily and inherently dangerous to human life, and they did not by their color or otherwise *disclose* their dangerous character, and, hence, the duty on the

part of the vendor to make known to the vendee their true nature. A threshing machine is not in and of itself dangerous, and there is no necessity of placing a label upon it. It speaks for itself, and discloses its uses and purposes as plainly as does a handsaw or the many other implements and machines in daily use. We think the case in hand is entirely different from those just mentioned.

The case of *Heaven v. Pender, supra,* before noted, and to which we are cited, was, by a majority of the judges, made to stand on the ground that the defendant, the owner of the dry dock, invited the plaintiff upon his premises. BRETT, M. R., formulated a general rule to which the other judges did not agree, which he says includes the case of goods and machinery "supplied to be used immediately by a particular person or persons or one of a class of persons;" but he says, "it would exclude a case in which the goods are supplied under circumstances in which it would be a chance by whom they would be used." He approves the case of *Collis v. Selden, supra,* because there was nothing in the declaration to show that the plaintiff was more likely to be in the public house than any other member of the public; and he doubts the case of *Thomas v. Winchester, supra,* a case which has never been questioned in this country to the knowledge of the writer. On the whole it seems to us *Heaven v. Pender* is not an authority in favor of the plaintiff in the present action.

The case of *Devlin v. Smith,* 89 N. Y. 470, is more in point. There a carpenter negligently constructed a scaffold for the use of a painter who had a contract to paint the dome of a courthouse, and a workman employed by the painter was killed by reason of the negligence of the carpenter in constructing the scaffold, and the carpenter was held liable by a divided court. The scaffold was ninety feet in height, and was built

for the specific purpose and for immediate use, and the carpenter must have known that any want of ordinary care would result in the loss of life.

Thus far we have treated this action as founded on negligence. In such actions fraud or an intentional wrong is not an element. The distinction between negligence and intentional wrong is important in tracing down liability for the consequences arising therefrom. This distinction is pointed out with clearness in an article in the 16 American & English Encyclopedia of Law, 392, 434. Had the defendant sold this machine to Ellis, knowing that the cylinder was defective and for that reason dangerous, without informing him of the defect, then the defendant would be liable even to third persons not themselves in fault. Shearman & Redfield on Negligence [4 Ed.] sec. 117. As said in *Wellington v. Oil Co.*, 104 Mass. 64: "It is well settled that a man who delivers an article, which he knows to be dangerous or noxious to another person, without notice of its nature and qualities, is liable for any injury which may reasonably be contemplated as likely to result, and which does in fact result, therefrom to that person or any other, who is not himself in fault."

But it seems out of place to pursue this inquiry further on this occasion; for there is no evidence showing or from which it can be fairly inferred that defendant knew the cylinder was in a dangerous condition. The plaintiff's evidence tends to show that the iron in the heads and bands of the cylinder was of a poor quality, that there was want of care in testing the pieces of iron before joined into the cylinder and perhaps want of care in testing the machine when completed; but all this does not show that defendant knew this cylinder was defective or unfit for use. The case discloses no motive whatever on the part of defendant for sending out a defective machine. The plaintiff's

case tends to show no more than negligence, and an action based on that ground must be confined to the immediate parties to the contract by which the machine was sold. To hold otherwise is to throw upon the manufacturers of machinery, not necessarily dangerous, a liability which, in our opinion, the law will not justify.

The judgment in this case is, therefore, simply reversed. All concur.