### STANDARD OIL CO. v. MURRAY.*

(Circuit Court of Appeals, Seventh Circuit. October 7, 1902.)

#### No. 869.

1. CONTRACTS—ACTION FOR BREACH—PERSONS NOT IN PRIVITY.

    An engineer, injured by an explosion of oil purchased by his employer, cannot maintain an action against the seller to recover for the injury, on the ground that the oil was not of the quality represented; such an action being grounded on a breach of the contract of sale to which plaintiff was not a party or privy.

2. NEGLIGENCE—RIGHT OF ACTION—LIABILITY OF MAKER OF ARTICLE.

    The manufacturer and seller of an article which is essentially dangerous to person or property owes a duty to the public to use care in its manufacture, that it shall not be unnecessarily dangerous; but with respect to articles not of such dangerous nature his only liability for negligence is to the party with whom he contracts.

---

* Rehearing denied November 15, 1902.

8. SAME—EVIDENCE TO ESTABLISH—INFERENCE FROM CIRCUMSTANCES PROVED.
Plaintiff was injured by an explosion which followed his lighting a match to enable him to look into a tank which contained a petroleum lubricating oil manufactured by defendant. He alleged that the explosion was due to gas or vapor generated by the oil owing to negligence in its manufacture; but there was no direct evidence of such negligence, and defendant's evidence showed that it was refined with care and would not generate an appreciable amount of gas at any ordinary temperature. The tank did not explode, nor did the oil take fire. It was shown that gasoline, which would generate an inflammable vapor at a comparatively low temperature, was used in the room for lighting purposes, and there was evidence tending to show that there was a quantity in the room at the time. *Held*, that under such evidence negligence in the manufacture of the lubricating oil could not be inferred from the mere fact of the explosion.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

The defendant in error, Frank Murray, brought suit in trespass on the case against the Standard Oil Company for personal injuries received by him while in the service of George O. Newberry & Co. as an engineer at a certain building in the city of Chicago. The first count of the declaration charges that Murray was an engineer in the service of Newberry & Co. and in charge of a stationary engine; that the Standard Oil Company on the 7th day of May, 1896, sold to his employer a certain quantity of oil designed for lubricating purposes, commonly known as "external engine oil"; that such oil, when properly manufactured and refined, will not under normal conditions, or when submitted to a moderate degree of heat or pressure, generate an inflammable or explosive gas; that the Standard Oil Company represented that the oil was of the usual and ordinary kind, and would not under ordinary conditions, or under a moderate degree of pressure or heat, generate or collect inflammable or explosive gas; that, notwithstanding, the oil purchased was of an impure and adulterated character, so that it evaporated, and generated and caused to be accumulated in the tank in which it was contained an inflammable and explosive gas; that on the 21st of July, 1896, while he was in the exercise of due care and engaged in the duties of his employment, there was a violent explosion of gas which had been generated and collected in the tank in which the oil was contained, whereby he was severely burned and scorched, and sustained injuries, etc. The second count charges that the Standard Oil Company was engaged in the business of manufacturing, refining, handling, and selling oil; that Murray was employed as engineer as stated in the first count; that the Standard Oil Company on the 7th of May sold to his employer for the purposes stated a certain quantity of oil designed for oiling and lubricating purposes; that the oil was of a vaporous and volatile character, likely to generate inflammable or explosive gas, as the Standard Oil Company then well knew or by the exercise of reasonable care might have known; that the company well knew that the oil was to be stored and kept in the engine room of the premises and was to be used in oiling the engine and machinery; that it was the duty of the company to warn Murray of the dangerous properties of the oil and that it was likely to evaporate and to generate inflammable or explosive gas in the tank wherein it was contained, but that the company wholly disregarded and neglected its duty and failed and omitted, in selling the oil, to warn Murray of its dangerous properties; that while he was in close proximity to the oil then remaining unused, and while in the exercise of due care, a large quantity of gas which had been generated and collected from the oil, ignited from a lighted match which Murray held in his hand, and thereupon the oil burned with a violent and explosive effect, whereby Murray sustained injuries, etc. At the trial, upon conclusion of the evidence, the Standard Oil Company requested the court to direct the jury to return a verdict for the defendant, which motion was overruled, and an exception to the ruling was duly preserved. A verdict was returned for the plaintiff below, and from a judgment rendered upon the verdict a writ of error is sued out by the Standard Oil Company.

The facts disclosed by the evidence are substantially without dispute. The Standard Oil Company on the 5th of May, 1896, sold to Newberry & Co. one barrel of "Renown Engine Oil," the highest grade of lubricating oil manufactured by the company. It has a fire test of 425° Fahrenheit, at which it burns. The oil was delivered on the 7th of May, 1896, and was pumped by Murray into a tank. The tank had no locks or padlocks. It had a hood, which could be pushed back, and upon the inside was a trap door, which could be lifted on a hinge; the pump being inserted into the barrel through the trap. Murray testified that up to the day of the accident he saw nothing to indicate that there was any gas about the oil, and he saw nothing to indicate anything injurious in connection with it. He drew from this tank of oil two or three times a day each day from May 8th until July 21st, at which time there was left of the original fifty-two gallons in the tank from five to fifteen gallons of the oil. The tank containing the oil was placed about twenty-five feet from the boiler and at the back end of the building. This boiler room was lighted with a gasoline torch and gasoline was used for that purpose during the time in question. The gasoline was kept in a barrel situated in the front basement of the building and was pumped directly into the gasoline torch through a funnel. Until the date of the injury Murray had no occasion to and did not use a light in the tank. On July 21, 1896, Murray lifted the hood and the inside cover of the oil tank, lighted a match, and leaned over the tank to ascertain the quantity of oil remaining therein, whereupon there was an explosion which threw him about seven feet against an engine, whereby he sustained injury. It was shown by the defendant that "Renown Engine Oil," such as was sold to Newberry & Co., is made from a high boiling process of the crude petroleum and is brought to certain special fire tests; the first test being 425° Fahrenheit, at which it takes fire and burns. The crude petroleum is boiled on a slow fire, and all the light boiling portion is eliminated; the gasoline and the intermediate oils being thrown off. A current of steam is introduced which removes all portions which burn at a low temperature. When the process is carried to a point where the test is sufficiently high, the oil remaining in the still is pumped into a large tank, and treated and made ready for use upon engines. From the tank it is drawn into barrels or tank cars, the barrels being new and of oak and holding about fifty gallons each. When the barrel is filled with the oil a bung first dipped in melted glue is then inserted and driven in perfectly tight, the glue allowed to set, and the barrels are then branded with the grade of oil with which the barrel is filled. It was also shown that gasoline would flash and burn at a temperature of 75° or 80°, and that "Renown Engine Oil" made by the Standard Oil Company would not explode under the circumstances detailed by the plaintiff and at the ordinary temperature of an engine room, or generate any appreciable amount of gas. It was also shown by the testimony of the superintendent of the company that, while gasoline would explode, he had never known lubricating oil to explode, and that only new barrels were used for "Renown Engine Oil." There was dispute of testimony with respect to a supposed custom obtaining in Chicago in 1896 to ascertain the method of discovering the amount of oil remaining in the tank,—the evidence on the part of Murray being that it is customary to use a lighted match and sometimes to use a rod; the evidence on the part of the company being that the custom was to use a graduated measuring stick as a gauge, or an ordinary rod, and that one could not tell by means of a light the amount of oil remaining in the tank. The evidence for the defendant below tended to show that on the day following the explosion the tank was in perfect condition, that a quart measure was upon the inside cover of the tank, having the odor of gasoline, and that a five-gallon can of gasoline was located about fifteen feet from the tank and a like distance from the boiler, and that gasoline would explode when in contact with a lighted match, but that the oil would not.

Alfred D. Eddy, for plaintiff in error.

R. M. Wing and T. L. Chadbourne, for defendant in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge, delivered the opinion of the court.

1. There can be no recovery under the first count of the declaration. Murray's employer, and not Murray, was the purchaser of the oil. There was no privity of contract between the Standard Oil Company and Murray, and a breach of that contract cannot be taken advantage of by him. Bank v. Ward, 100 U. S. 195, 25 L. Ed. 621.

2. The second count proceeds upon the ground that the oil was sold to Murray's employer to be used by Murray in that service, as the Standard Oil Company knew; that the oil was of a vaporous and volatile character, likely to generate inflammable or explosive gas, as the oil company knew or ought to have known; and the company failed to warn Murray of the dangerous properties of the oil as was its duty. We said in Goodlander Mill Co. v. Standard Oil Co., 24 U. S. App. 7, 11 C. C. A. 253, 63 Fed. 400, that:

"It is not every one who suffers loss from another's negligence who may recover therefor. Negligence, to be actionable, must occur by breach of a legal duty arising out of contract, or otherwise owing to the person sustaining the loss. Kahl v. Love, 37 N. J. Law, 5; Sav. Bank v. Ward, 100 U. S. 195, 25 L. Ed. 621. Mr. Wharton defines legal duty to be 'that which the law requires to be done or forborne to a determinate person or to the public at large, and as correlative to a right vested in such determinate person or the public at large.' Wharton, Neg. (2d Ed.) § 24."

The acceptance by a vendee of a thing sold, except under special circumstances, relieves the vendor from liability to a stranger for an injury resulting to him from the negligent manufacture or construction of the thing sold. Bragdon v. Perkins-Campbell Co., 30 C. C. A. 567, 87 Fed. 109; Necker v. Harvey, 49 Mich. 517, 14 N. W. 503. The duty owing to the public, for breach of which one injured may recover, has respect to and is limited to instruments and articles in their nature calculated to do injury, such as are essentially and in their elements instruments of danger, and to acts that are ordinarily dangerous to life and property. If the wrongful act be not imminently dangerous to life or property, the negligent vendor is liable only to the party with whom he contracted. McCaffery v. Manufacturing Co. (R. I.) 50 Atl. 651, 55 L. R. A. 822. Petroleum oil, as we held in Goodlander Mill Co. v. Standard Oil Co., supra, and in Railway Co. v. Ballentine, 28 C. C. A. 572, 84 Fed. 935, is not a dangerous agency within the rule that he who uses it does so at his peril. It is dangerous only when in considerable quantities it is brought into contact with fire. That is a fact of common knowledge, with which every one is chargeable.

3. There was no proof of negligence in the manufacture of the oil, unless culpable negligence is to be inferred from the mere fact of an explosion. We do not doubt the rule that an accident may be of such a nature that presumption of negligence will be indulged from its happening. The evidence here shows that the oil was refined with care, and at the ordinary temperature of an engine room would not generate an appreciable amount of gas, and that it would not take fire or burn at a less temperature than 425° Fahrenheit, while gasoline will at a temperature of 80°. The temperature of the room at the time of the injury was 95°. The oil had been in the possession of Murray's employer, and in the care of Murray, for more than

two months. It was placed in the room in which gasoline was used. There was an explosion upon igniting the match, but the oil did not take fire. Gasoline at an ordinary temperature gives off an inflammable vapor, impregnating the air, and, in contact with flame, causing an explosion. Under such circumstances no presumption of negligence can arise with respect to the manufacture of the oil.

4. The cause of the explosion rests in mere speculation. It may have occurred from the presence of gas generated from the oil, or more probably from the presence of gasoline, in conjunction with flame from a lighted match. The burden of proof was upon Murray, assuming that he could avail himself of negligence in the manufacture of the oil. None was shown, the mere fact of the explosion under the circumstances raising no presumption of negligence. It is not, therefore, necessary to consider the question whether, assuming negligence in the manufacture of the oil, such negligence was the proximate cause of the injury; or whether the act of lighting the match was not an intervening cause, superseding the original wrong, so as to make it remote in the chain of causation, although it may have remotely contributed to the injury as an occasion or condition.

The judgment is reversed, and the cause remanded, with a direction to grant a new trial.