[Civ. No. 3607.  First Appellate District, Division One.—November 29, 1920.]

## MARIN ROCK COMPANY, Respondent, v. E. B. & A. L. STONE COMPANY, Appellant.

[1] SALE—BREACH OF CONTRACT—FINDINGS—EVIDENCE.—In this action for breach of an alleged contract to furnish material for highway construction, the evidence is held sufficient to sustain the findings of the existence of the contract and of the giving defendant ample opportunity to supply the material before its purchase elsewhere.

[2] ID.—MEASURE OF DAMAGE.—The measure of damage in such action is the excess of the cost of the material in the nearest market over the contract price.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. John Hunt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Raymond Perry for Appellant.

McNair & Stoker for Respondent.

KERRIGAN, J.—This is an appeal by defendant corporation from a judgment awarding plaintiff the sum of $598.35 as damages for breach of contract.

From the pleadings it appears that plaintiff entered into a contract with the county of Santa Clara for the construction of a county highway between the towns of Sunnyvale and Cupertino, in said county. It is alleged in the com-

50 Cal. App.—14

plaint that defendant thereafter agreed with plaintiff to sell and deliver to it for a stipulated price all the crushed rock and sand required by plaintiff to perform its contract with the county; that defendant delivered to plaintiff a portion of such rock and sand, but failed and neglected, notwithstanding the demand of plaintiff, to furnish 1,945 tons thereof necessary to the completion of the work; that the plaintiff on account of such default was compelled to and did purchase said amount of rock and sand elsewhere, and paid therefor the sum of $499.31 in excess of the price at which defendant had agreed to sell and deliver the same to plaintiff; that because of said default of defendant plaintiff was damaged in the sum named, with interest thereon. By its answer defendant denied the allegations of the complaint, and, further answering, set up a separate defense, the substance of which is that it merely gave plaintiff a quotation of prices for the material to be furnished from one of its plants known as the Campbell plant, and that under this offer of quoted prices plaintiff purchased from defendant a large number of cars of sand and gravel. It further alleged that because of an objection made by a deputy county inspector to the Campbell material, defendant substituted a more expensive kind from another of its plants, known as the Coyote plant, at no greater cost to plaintiff, and at a great loss to defendant, and that when plaintiff began to construct another section of the highway which called for the Coyote grade of rock, plaintiff, without notice to or demand on defendant, purchased seventeen cars of material from a competitor, in consequence of which defendant refused to further deal with plaintiff, whereupon plaintiff purchased twenty-two additional cars of material elsewhere. The number of tons referred to in the complaint consisted of these two trainload lots.

The trial court, Honorable John Hunt presiding, found that the parties had entered into the contract as alleged by plaintiff, and that defendant refused to deliver the 1,945 tons of material, notwithstanding plaintiff's demand, and rendered judgment in the sum above named.

Appellant relies for a reversal upon two grounds. First, that there was no contract between the parties; second, that even if a contract existed, plaintiff was the one who

breached it, and therefore defendant was relieved of liability thereon.

There is no merit in either contention. The record discloses that at about the time plaintiff received the contract from the county it applied to the defendant for quotations on rock and sand, and that thereupon oral negotiations and written communications were had between the parties, which culminated in a contract in part oral and in part written. The written correspondence is somewhat voluminous, and a full recital thereof would unduly lengthen this decision. In substance, this correspondence confirms certain oral negotiations, and reveals the fact that plaintiff ordered from defendant all the rock and gravel necessary for the work. The first writing had between the parties was a letter from defendant to plaintiff which contained assurances that defendant's rock was first class in character. Then follow a series of letters dealing with prices, shipments, and other details covering the manner and time of payment, the mode and place of measuring the rock, the appointment of an umpire in the event of a dispute, and the payment of freight charges, all of which conclusively show that the parties intended to and did enter into a contract for all the rock and sand necessary to complete plaintiff's contract with the county. One of these letters, written by defendant's sales manager, evidences that a conference was had between the representatives of the parties in relation to the contract, and it concludes with the following language: "We wish to thank you for the order which you requested us to enter to-day for the material you will require for this work." Plaintiff, being dissatisfied with certain paragraphs contained in this letter, wrote to defendant for an explanation thereof, and in reply thereto defendant answered with what it denominated a substitute letter, which contained a confirmation of certain conversations relative to all the points and details covering prices, shipments, and other matters heretofore mentioned. Defendant concludes this letter as follows: "If there is anything stated . . . not in accordance with our understanding . . . kindly advise us." No further suggestions being made by plaintiff, defendant thereafter commenced to and did supply all the rock and sand that entered into the construction of the highway according to the terms of the

agreement had between the parties except the last 1,945 tons used, the excess cost of which forms the basis of this action.

In addition to these facts and circumstances the oral evidence in the case with reference to the breach of the contract confirms and supports the conclusion of the trial court that a contract existed for the entire work.

In urging its second ground for reversal appellant assumes the existence of such a contract, but attempts to justify its breach upon the ground that plaintiff went into the open market and purchased material without first giving defendant an opportunity to supply it. The evidence upon this subject, while conflicting, fully supports the finding that defendant committed the breach. It appears therefrom that plaintiff made every effort to get the material from defendant. Its engineer in charge of the work testified that the county officials were complaining of the slow progress being made with the work, and that he spoke to defendant's superintendent daily concerning the matter, and that he made numerous trips to defendant's plant to endeavor to have it make deliveries faster, and had even supplied a man at plaintiff's expense to visit defendant's plant for such purpose, but without avail. It is also in evidence that plaintiff had advised defendant by letter of the delays, and had requested permission to order from other parties. The situation not having been remedied, a county supervisor and the engineer of the work made a final threat to take the work over, whereupon plaintiff ordered seventeen carloads of material from Niles, in consequence of which A. L. Stone, vice-president of defendant corporation, refused to make further deliveries.

[1] We do not deem further discussion of the evidence necessary. It is sufficient to say that upon both of the questions here presented there was abundant testimony to sustain the finding of the existence of the contract, and also the further finding that plaintiff gave defendant every opportunity to supply the material before purchasing elsewhere.

[2] Further complaint is made as to the amount of damages allowed. The measure of damage was the excess of the cost of the material in the nearest market over the contract price. (*Fairchild etc. Co.* v. *Southern etc. Co.,* 153

Cal. 264, [110 Pac. 951]; secs. 3308, 3354, Civ. Code.)    It is in evidence that before placing the order plaintiff consulted firms engaged in supplying the material involved, and was quoted the excess amount plaintiff was required to pay.    There is therefore no merit in this objection.

For the reasons given the judgment is affirmed.

Richards, J., and Wood, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 29, 1920.