[Civ. No. 2423.   Third Appellate District.—March 13, 1922.]

## MARSHALL DIGGS et al., Appellants, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), et al., Respondents.

[1] PLEADING—BREACH OF WATER CONTRACT—INSUFFICIENT ALLEGA-TION—CONCLUSION OF LAW.—In an action against a gas and elec-tric company for alleged breach of a written contract for the sale and delivery of water for irrigation purposes, an allegation in the complaint that defendant willfully and wrongfully and in violation of the terms and provisions of its contract shut off all water from plaintiffs' lands is not a sufficient allegation showing a breach of the contract, since it involves a mere conclusion of law.

[2] CONTRACT—DELIVERY OF WATER FOR IRRIGATION—BREACH—RIGHT OF ACTION BY MORTGAGEE OF CROP. — A mortgagee of a growing crop, not a party to a contract to furnish water to the land on which the crop is growing, may not maintain an action for breach of the contract to deliver the water because he may have in-directly suffered detriment thereby or would have been benefited if the contract had been observed by the parties thereto.

APPEAL from a judgment of the Superior Court of Sutter County. K. S. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. F. Metteer and W. H. Carlin for Appellants.

T. J. Straub, W. B. Bosley and Richard Belcher for Respondents.

BURNETT, J.—The trial court sustained a demurrer to an amended complaint without leave to amend, the de-murrer being both general and special, and from the judg-ment entered thereon the appeal has been taken. It is not disputed that the basis of the action is found in a certain written contract of January 20, 1919, between re-spondent and one C. W. Levisee. The complaint is too voluminous to set out in full, but respondent has furnished a fair synopsis of it, which we may adopt substantially. It alleges the execution of said contract, which is set out *in haec verba*, wherein respondent agreed to sell and deliver

not to exceed six hundred miner's inches of water to Levisee for irrigating land owned by or leased to him in the county of Sutter, and to deliver such water at a fixed point designated in said contract, it being expressly provided that said water was to "be used only by the consumer upon his said lands for the purpose of raising rice and beans thereon." No lands were described in the contract further than to be designated as "seven hundred and fifty acres of land owned by or leased to the consumer in said County of Sutter." No source of supply of the water was mentioned in the contract, but it provided that Levisee was to pay for it in accordance with respondent's regularly established rates for the sale and delivery for development purposes only of water in Auburn ravine. The contract provided that "the water to be furnished hereunder will first be utilized by the company for the generation of electric energy, which is the primary use to which the same will be put. Therefore anything herein contained to the contrary notwithstanding, it is agreed by and between the parties hereto that the Company shall have the right, without incurring any liability to the consumer by reason thereof, to discontinue delivering water hereunder whenever in the opinion of its engineer in charge such discontinuance is necessary in order to conserve the company's stored waters required for the generation of electric energy."

It is also provided that "the consumer shall not assign this agreement or any of the rights hereunder without having first obtained the written consent of the company thereto."

It is further alleged that, at the time of the execution of said contract, respondent knew that Levisee had leased the lands described in said complaint and that they were the lands contemplated by the contract; that respondent and Levisee expressly understood and agreed that Levisee was acting as a promoter to enable respondent to sell its water for irrigation of said lands; that after acquiring said lands Levisee would assign said contract "to such person or persons as might be available and thereafter, and in accordance with said agreement and understanding had by and between said Levisee and said defendant company, and prior to the commencement of the irrigating season of 1919, said C. W. Levisee did sublet said lands and premises

aforesaid and therein and thereby, and at the same time he did assign said contract . . . to defendant W. S. Gause and one A. L. Chambers''; that thereafter Chambers transferred his interest to Gause; that respondent well knowing of said subletting and said assignment did furnish and deliver the water in and upon the lands described in the complaint.    The said sublease is set out in the complaint, wherein it appears that the lessor was to furnish water for irrigating the rice on said premises, the lease providing: ''such water to be arranged for, however, by the lessor'' and, ''the lessor will not be responsible for any failure to supply water at any time for any cause or for any damage, whether on account of failure of supply, defective ditches, floods or wastage.''

It is alleged that said sublease of March 20, 1919, was made with full knowledge by all the parties of the terms and conditions of the said two agreements between Levisee and respondent and in full faith that respondent would furnish the water for irrigation as therein provided; that relying upon said promise said Gause ''did cause to be prepared, cultivated and cropped to rice'' said lands; that defendant corporation at the proper time began the delivery of water and as a result thereof and ''of careful cultivation and nurture,'' the rice crop upon said lands was in a flourishing condition, ''gave promise of a bountiful crop; whereupon without notice to said W. S. Gause, defendant corporation on or about the ninth day of July, 1919, willfully and wrongfully and in violation of the terms and provisions of its said contract aforesaid shut off all water from said lands, turned and diverted its water supply in other directions and completely deprived said W. S. Gause and all of said lands from any further water for irrigation thereof''; that in consequence thereof said rice crop shriveled up and became worthless and it was impossible to raise any crop on said land for the year 1919; that it was upon the direct assurance of respondent that said water would be furnished in full compliance with the term of said contract and in sufficient amount that said sublease was entered into and that the irrigation mentioned therein was to be done with water to be supplied under the contract between Levisee and respondent and that Levisee and Gause in entering into said sublease treated and re-

garded the water to be supplied by respondent as a part of or appurtenant to said lands during the term of said sublease; that said Gause had no other means or source of irrigating said lands, which was well known to respondent; that "said C. W. Levisee duly performed and caused to be performed all covenants and conditions on his part to be performed as in said contract and agreement with said defendant corporation is set forth, including the payment of all moneys by him required to be paid hereunder."

It is further alleged that on or about the third day of July, 1919, Gause executed a certain indenture, therein set out *in haec verba,* to plaintiffs wherein said Gause, in consideration of the advancement by plaintiff of certain sums of money to him undertook to pay to them fifty cents for each sack of rice that he should realize from his crop, and also one-half of all sums realized for all rice sold above four cents per pound "and by said agreement said W. S. Gause did assign and transfer to plaintiff the specific portions and interest in and to the crop to be grown upon said lands during the year 1919 in said agreement mentioned and referred to."

It is further alleged that "on the said third day of July, 1919, and at the same time as a part of the transaction concerning the execution of said agreement last aforesaid said W. S. Gause" executed to plaintiff a crop mortgage on said rice crop, which mortgage is therein set out in full, and it is on that relation that appellants base their alleged cause of action for damages for failure to deliver the water.

[1] Respondents claim that the order of the trial court is justified on several grounds. One of these is that there is no sufficient allegation showing a breach of the water contract. It is true that the complaint alleges that respondent "willfully and wrongfully and in violation of the terms and provisions of its said contract as aforesaid" shut off all water from said lands, but the quoted portion of the foregoing involves a mere conclusion of law and is not deemed admitted by the demurrer. (*Fisher* v. *Fisher,* 23 Cal. App. 310 [137 Pac. 1094]; 31 Cyc. 54; 21 R. C. L. 440, sec. 5.) The extent of respondent's obligation to furnish water is measured, of course, by the terms of the contract itself and therein it was expressly provided, as we

have seen, that the water "will first be utilized by the company for the generation of electric energy" and that the respondent could without liability to Levisee discontinue delivering water to him under the contract whenever respondent's engineer deemed it necessary to do so in order to conserve such water for electric generation. Thereby it appears that respondent's promise was not absolute, but was conditional. It amounted to an engagement to furnish water, provided that, in the opinion of its engineer, it was not needed for the other purpose. It was not, therefore, sufficient to allege, so it is claimed, that respondent failed to deliver the water, but it must appear that respondent's obligation became absolute by reason of the nonexistence of the condition therein specified. Respondent construes the contract as though it had been agreed to deliver so much water if the supply was sufficient or if it was not needed for electric generation and, therefore, concludes that it was incumbent upon the pleader, in order to state a cause of action, to allege that the supply was sufficient, or that it was not needed for electric generation and that the case falls within the principle of such decisions as *Van Buskirk* v. *Kuhns,* 164 Cal. 472 [Ann. Cas. 1914B, 932, 44 L. R. A. (N. S.) 710, 129 Pac. 587], wherein the defendant had agreed to pay "when able" and plaintiff did not allege ability to pay and wherein the supreme court said: "If the promise is conditional upon such ability, it is, as said in *Rodgers* v. *Byers,* 127 Cal. 528 [60 Pac. 42], incumbent upon the plaintiff to allege and prove that the condition has been complied with. This is not, like the plea of the statute of limitations, matter of defense. It is a substantial part of the cause of action, and the burden of proof with respect to it is upon the plaintiff." (Citing cases.)

The theory of appellants is that such consideration involves a matter of defense and that it was unnecessary to anticipate it in the complaint.

There would seem to be much force in the claim of respondent in this respect, but whatever may be the correct view, it is unnecessary to decide as it seems plain that the action must fail because appellants have not shown any privity with respondent under the water contract.

The principle is admitted by appellants in the following language: "We admit, of course, that there must be a

privity shown, otherwise an action could not be maintained. The plaintiff must legally connect himself up with the defendant in the action and plaintiff must allege some right on his part which has been violated and some legal duty which defendant owed him and which was not performed.''

There is no pretense that respondent made any contract with appellants or that any contract made by the former was for the benefit of the latter or that any such contract was ever assigned to appellants. If it be admitted that the original contract created a water right, which became appurtenant to the land, this interest was not mortgaged or affected in any way by the instrument executed by appellants and Gause. Their engagement amounted to an hypothecation only of the growing crop and did not convey or encumber the leasehold interest or any appurtenance to the land. Neither is there any estoppel in favor of appellants. As to that the authorities justify the statement of defendant company: ''To constitute an estoppel against respondent in this case in favor of appellants it must appear that respondent made certain material false representations, either by statement or conduct implying a statement to appellants with the intention on respondent's part that appellants should act thereon and that appellants relying upon such representation did act thereon to their injury.'' The principle is indeed embodied in subdivision 3 of section 1962 of the Code of Civil Procedure.

There is no allegation in the complaint that respondent by any statement or conduct intended appellant to believe, or to act upon the belief that respondent was undertaking to supply water directly to Gause, nor is there any allegation that when the loan was made appellants relied upon any representation either of word or conduct by respondent, or that they even knew that Gause was using water supplied by respondent. There is likewise no allegation that, in executing the contract with Levisee, respondent contemplated or had any reason to contemplate that persons not connected with the contract, such as materialmen or money lenders, would act thereon.

In fact, no element of estoppel in favor of appellants is set forth in the complaint, and the only possible ground, as we view it, upon which plaintiffs might recover arises from the relation that, as mortgagees, they sustain to Gause.

In reference to this consideration appellants quote 5
R. C. L., section 109, as follows: "Besides the right to
foreclose on default of the mortgagor, . . . and the right
to bring actions of replevin or trover where necessary,
generally speaking, the mortgagee has a right of action
against any one who interferes with his rights or who
damages or destroys the mortgaged property or conceals it
with knowledge of the existence of the mortgage or re-
moves it into another state." It is manifest, however, that
the foregoing must be considered in the light of the law
as to chattel mortgages in the states wherein the decisions
supporting the text are found. In some jurisdictions, as is
well known, the mortgagee is vested with the legal title
to and right of possession of the crop, but according to
the rule in this state appellants had no title to any part
of the crop (sec. 2888, Civ. Code), but had merely an
unmatured lien on said crop for securing the payment to
them by Gause of a promissory note that was payable on
or before January 1, 1920. (*Shoobert* v. *De Motta,* 112
Cal. 215 [53 Am. St. Rep. 207, 44 Pac. 487]; *Alferitz* v.
*Borgwardt,* 126 Cal. 201 [58 Pac. 460].)

And unless the mortgage especially conferred the right
therefor, appellants were not entitled to the possession of
the growing crops. (Sec. 2927, Civ. Code.) There is no
allegation that appellants were in possession or were en-
titled to be in possession under the mortgage at the time of
the alleged destruction of the growing crop. Under such
circumstances it may be doubted whether appellants could
have maintained against respondent an action at law had
the latter by direct trespass entered on the premises at
the time mentioned and destroyed the crop (5 R. C. L., sec.
108; *Bank of Ukiah* v. *Moore,* 106 Cal. 673 [39 Pac. 1071]),
although, as shown in the latter citation, "the power of a
court of equity to preserve the mortgaged property from
destruction, so that it may answer the purpose of the
mortgage is undoubted."

[2] But the foregoing consideration is really not in-
volved herein. We are dealing with the question whether
a person not a party to a contract may maintain an action
for its violation because he may have indirectly suffered
detriment thereby or would have been benefited if the con-
tract had been observed by the parties thereto. How can

the case be any different in principle, as suggested by respondent, from an action under similar circumstances, "against a third person who had undertaken to furnish Gause a harvester, a tractor, a threshing outfit or sacks or other necessary implements for caring for his rice crop, or fertilizer for its proper development or even labor for its proper cultivation"? In such instances it could not be successfully contended that the mortgagee of the growing crop could maintain an action against the third party for damages because he had violated his contract with the mortgagor. We may carry the theory of appellants a step further and suppose that they had borrowed from a bank the money which they advanced to Gause and by reason of the inability of appellants to realize upon the crop they could not repay the bank. Under such circumstances it would hardly be claimed that their creditor could maintain an action for damages against respondent for its failure to deliver the water under its contract with Levisee or with Gause.

The rule is that there must be privity and that remote damages to third parties cannot be recovered. The reasons for thus limiting the rule are variously stated in the decisions. For instance: "To hold that such actions could be maintained would not only lead to endless complications, in following out cause and effect but would restrict and embarrass the right to make contracts by burdening them with obligations, which parties would not voluntarily assume." (*Roddy* v. *Missouri Pac. Ry.*, 104 Mo. 234 [24 Am. St. Rep. 333, 12 L. R. A. 746, 15 S. W. 1112].) "If we were to hold that plaintiff could sue in such a case there is no point at which such actions would stop. The only safe rule is to confine the right to recover to those who enter into the contract; if we go one step beyond that there is no reason why we should not go fifty." (*Winterbottom* v. *Wright*, 10 Mees. & W. 109.)

"The object of parties in inserting in their contracts specific undertakings with respect to the work to be done is to create an obligation *inter sese.* These engagements and undertakings must necessarily be subject to modifications and waiver by the contracting parties. If third parties can acquire a right in a contract in the nature of a duty to have it performed as contracted for, the parties

will be deprived of control over their own contracts."
(*Marvin Safe Co.* v. *Ward*, 46 N. J. L. 19.)   Among other
instructive cases upon the same subject cited by respond-
ent are the following: *Standard Oil Co.* v. *Murray*, 119 Fed.
572 [57 C. C. A. 1]; *Bank* v. *Ward*, 100 U. S. 195 [25
L. Ed. 621, see, also, Rose's U. S. Notes]; *Henzis* v. *Kings-
land*, 110 Mo. 605 [33 Am. St. Rep. 482, 15 L. R. A. 821,
19 S. W. 630]; *Stockton* v. *Brown* (Tex. Civ. App.), 106
S. W. 423; *Knowles* v. *Leggett*, 7 Colo. App. 265 [43 Pac.
154]; *Barstow Irr. Co.* v. *Cleghorn* (Tex. Civ. App.), 93
S. W. 1023; *Clancy* v. *Byrne*, 56 N. Y. 129 [15 Am. Rep.
391]; *Thompson* v. *Sea Board etc. Co.*, 165 N. C. 377 [52
L. R. A. (N. S.) 97, 81 S. E. 315]; *Chung Kee* v. *Davidson*,
73 Cal. 522 [15 Pac. 100]; *Buckley* v. *Gray*, 110 Cal. 339
[52 Am. St. Rep. 88, 31 L. R. A. 862, 42 Pac. 900]; *Kruse*
v. *Wilson*, 3 Cal. App. 91 [84 Pac. 442]; *Wilson* v. *Shea*,
29 Cal. App. 788 [157 Pac. 543]; *Marin Rock Co.* v. *E. B.
& A. L. Stone Co.*, 50 Cal. App. 120 [194 Pac. 732]; Id.,
50 Cal. App. 209 [194 Pac. 734].

Moreover, since the only interest of appellants in said
crop was the right to subject it to the payment of their
note against Gause, if the latter is solvent they were not
damaged by the failure of respondent to deliver the water.
In the absence of any averment to the contrary, we must
assume that they can enforce the obligation notwithstand-
ing the loss of their security.   In that respect we think the
complaint is fatally defective.

The judgment, in our opinion, should be affirmed, and
it is so ordered.

Hart, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court
after judgment in the district court of appeal, was denied
by the supreme court on May 11, 1922.

All the Justices concurred.

Waste, J., was absent and Richards, J., *pro tem.*, was
acting.