KEEP v. NATIONAL TUBE CO.

(Circuit Court, D. New Jersey.    May 20, 1907.)

1. DEATH—STATUTE GIVING RIGHT OF ACTION—ENFORCEMENT IN FOREIGN JU-
RISDICTION.

The rule established by the weight of authority is that, if a statute
of the forum creates a right of action for damages resulting from death
caused by wrongful act, neglect, or default, a foreign statute creating such
right will be enforced, if the two statutes be not so dissimilar as to es-
tablish substantially different policies.   Substantial similarity between the
statutes is all that is required, and mere dissimilarities as to the persons
in whose names actions may be brought, or in the amounts recoverable,
will not defeat jurisdiction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Death, § 50.]

2. SAME—LIMITATION OF ACTION—DIFFERENCE BETWEEN LOCAL AND FOREIGN
STATUTES.

The right to recover damages for wrongful death being a purely stat-
utory right, a limitation of the time within which an action may be
brought for its enforcement, contained in the statute which creates it,
inheres in the right and governs in an action brought under such stat-
ute, although in a foreign jurisdiction, and, where the state of the forum
has a substantially similar statute, the fact that it prescribes a shorter
period of limitation for suits brought thereunder does not render the for-
eign statute subversive of any general public policy of the state, nor pre-
vent the court from entertaining jurisdiction of the action, if brought
within the time limited by the statute sued on.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 52.

What law governs actions, see note to Burrell v. Fleming, 47 C. C. A.
606.]

3. NEGLIGENCE—ACTS OR OMISSION CONSTITUTING NEGLIGENCE—LIABILITY OF
MANUFACTURER OF DANGEROUS ARTICLE.

The manufacturer of a thing inherently dangerous, or which when ap-
plied to its intended use becomes dangerous, who sells it for such use, is
liable in damages to any one who, without fault on his part, sustains in-
jury which is the natural and proximate result of the manufacturer's
negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 25.]

At Law.    On demurrer to declaration.

Morton Barrows, for plaintiff.
Sherrerd Depue, for defendant.

LANNING, District Judge.    The plaintiff is a citizen of Minnesota,
and has been duly appointed in that state administratrix of the estate
of Alfred Keep, deceased.    He died on February 20, 1905, from in-
juries received in that state by the explosion of a carbonic acid gas
cylinder, while engaged in the service of his employer, to whom the
defendant sold the cylinder.    The averment is that the cylinder was
defective, and this action was commenced January 2, 1907, under the
provisions of a Minnesota statute reading as follows:

"When death is caused by the wrongful act or omission of any party or
corporation the personal representative of the deceased may maintain an action
if he might have maintained an action had he lived for an injury caused
by the same act or omission by which the death was caused.    But the ac-
tion shall be commenced within two years after the act or omission by which

the death was caused. The damages therein cannot exceed five thousand dollars, and the amount received is to be for the exclusive benefit of the widow and next of kin, to be distributed to them in the same proportion as the personal property of deceased persons. Provided that any demand for the support of the deceased and funeral expenses duly allowed by the probate court shall be first deducted and paid."

The defendant's demurrer presents for consideration two questions: First, assuming that a cause of action is set forth in the declaration, will this court take jurisdiction of it? And, second, do the facts stated in the declaration constitute a cause of action against the defendant?

First. It is conceded that the action is not founded on any right existing under the common law, and that such right, if any there be, is purely the creature of the Minnesota statute. It is further conceded that, if there be a right of action, it can be enforced in New Jersey only on the principles of comity, and that courts decline to enforce rights created by foreign statutes opposed to the domestic policy of the forum. The argument of the defendant's counsel is that the Minnesota statute is opposed to the public policy of New Jersey, as that policy is expressed in the act of her Legislature, the material sections of which reads as follows:

"Section .1. That whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who, or the corporation which, would have been liable if death had not ensued shall be liable to an action for damages notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

"Sec. 2. That every such action shall be brought by and in the names of the personal representatives of such deceased person and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person and shall be distributed to such widow and next of kin in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they shall deem fair and just with reference to the pecuniary injury resulting from such death to the wife and next of kin of such deceased person, provided that every such action shall be commenced within twelve calendar months after the death of such deceased person."

The contention is that the Minnesota statute is repugnant to the domestic policy of the state of New Jersey in three respects: (1) Because, under the Minnesota statute, the damages are limited to $5,-000, while under the New Jersey statute there is no arbitrary limitation of the amount that may be recovered; (2) because, under the Minnesota statute, any demand for the support of the deceased and his funeral expenses, duly allowed by the probate court, shall be first deducted and paid from the amount recovered; and (3) because, under the Minnesota statute, the action is required to be commenced within two years after the act or omission by which the death was caused, while under the New Jersey statute the action must be commenced within twelve calendar months after the death of the deceased person.

The first two of these objections are easily disposed of. With a given state of facts, the amount recoverable under the Minnesota statute can never exceed what, with the same facts, might be recovered under the New Jersey statute, while in some cases it might, by reason of the $5,000 limitation, be less. The provisions of the Minnesota statute on which these objections are based do not in any wise contravene any principle of the domestic policy of New Jersey. The third objection demands fuller consideration.

In Haggerty v. Central Railroad Company, 31 N. J. Law, 350, Chief Justice Beasley, speaking of the New Jersey statute, said:

"The design of the statute cannot be mistaken. It is entirely and in the highest sense remedial in its nature. Its object was to abolish the harsh and technical rule of the common law actio personalis moritur cum persona. The rule had nothing but prescriptive authority to support it. It was a defect in the law, and this statute was designed to remove that defect. It is therefore entitled to receive the liberal construction which appertains to remedial statutes. The mischief to be redressed was the nonexistence of a remedy for an admitted wrong. It is clearly, therefore, the duty of the court to advance the remedy."

In Murphy v. Board of Chosen Freeholders, 57 N. J. Law, 245, 251, 31 Atl. 229, the act was construed to be applicable to the defendant, a public corporation, created only for governmental purposes; the Legislature having, by another act, made such corporations liable for damages resulting from neglect to repair the bridges committed to their charge. The argument in behalf of the defendant in that case was that the word "corporation," used in the New Jersey statute, had no application to, and did not include within its meaning, a public, municipal corporation; but the court held that the act was a remedial one and should be construed liberally for the suppression of the mischief existing in the common law and the advancement of the remedy. It will be observed, then, that the New Jersey courts have not adopted a narrow construction of the New Jersey statute. They have held the policy of the state, as expressed in her statute, to be a liberal one.

So, too they recognize the rule of comity in enforcing rights created by the statutes of other states. The Pennsylvania statute, concerning the recovery of damages resulting from death caused by wrongful act, confers the right of action on the widow or other relatives of the deceased; but, notwithstanding the New Jersey statute confers the right on the personal representative of the deceased, the Supreme Court of New Jersey, in Lower v. Segal, 59 N. J. Law, 68, 34 Atl. 945, said:

"The statute of Pennsylvania is, however, not repugnant to our domestic policy, as is evinced by our having modified the common law upon like principles in the interest of our own citizens. It is therefore the duty of our courts to recognize and enforce the rule of the sister commonwealth."

In Usher v. Railroad Co., 126 Pa. 206, 17 Atl. 597, 4 L. R. A. 261, 12 Am. St. Rep. 863, it was held that an action brought in Pennsylvania, by the widow of one who had been killed in a railroad accident on the defendant's railroad in New Jersey, could not be maintained; but the opinion indicates that, if the action had been instituted by the personal representative of the deceased person, it would, on principles of comity, have been sustained. New Jersey and Pennsylvania, there-

fore, will doubtless each enforce the right created by the statute of the other.

The rule established by the weight of authority is that, if a statute of the forum creates a right of action for damages resulting from death caused by wrongful act, neglect, or default, a foreign statute creating such right will be enforced, if the two statutes be not so dissimilar as to establish substantially different policies. It is not necessary that the statutes shall be precisely the same. Mere dissimilarities as to the persons in whose names actions may be brought, or in the amounts recoverable, will not defeat jurisdiction. Substantial similarity is all that is required. Texas & Pacific Railway Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829; Boston & M. R. Co. v. McDuffey, 79 Fed. 934, 25 C. C. A. 247; Davidow v. Pennsylvania R. Co. (C. C.) 85 Fed. 943; Stewart v. B. & O. Railroad Co., 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537; Northern Pacific Railroad Co. v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978, 38 L. Ed. 958; Wooden v. W. N. Y. & P. R. R. Co., 126 N. Y. 103, 26 N. E. 1050, 13 L. R. A. 458, 22 Am. St. Rep. 803; Wharton's Conflict of Laws, § 480a et seq.

The record of this case shows, however, that this action was commenced more than 12 months after the death of the plaintiff's intestate, though within 2 years from that time. The defendant contends that no action can be maintained on the Minnesota statute in New Jersey after the expiration of the period of 12 months limited in the New Jersey statute. It is true that actions are barred not by the lex loci, but by the lex fori; but the limitation of time within which an action may be instituted under the Minnesota statute, or that within which it may be instituted under the New Jersey statute, is so connected with the right of action itself that it does not operate as a mere limitation of time within which the remedy may be prosecuted. A general statute of limitations curtails a pre-existent common-law right; but the right of action for damages resulting from death is unknown to the common law. It is a new right created by statute for a limited period. In Minnesota that right exists for 2 years; in New Jersey it exists for 12 months. One who acquires such a right under the New Jersey statute, or under the Minnesota statute, may carry it with him into any jurisdiction where a substantially similar right has been created. Why should the time within which such a right may be enforced be curtailed in a jurisdiction different from that in which the right was created by any statute other than one which, like a general statute of limitations, operates on the remedy only? The New Jersey statute does not limit the time within which an action may be instituted under the Minnesota statute, for the reason that the New Jersey statute creates no right of action in any case where death has resulted from a wrongful act done in another state.

In Theroux v. Northern Pacific R. Co., 64 Fed. 84, 12 C. C. A. 52, it appears that the plaintiff's intestate was killed in the state of Montana by the wrongful act or negligence of the defendant. The action was founded on the death act of Montana, and instituted in a state court of Minnesota, from which it was removed to the Circuit Court of the United States for the District of Minnesota. The Min-

nesota statute, as we have already seen, required the action to be commenced within two years after the act or omission by which the death was caused, and the action was dismissed because it was instituted after the expiration of the two years, though within the period of three years allowed by the Montana statute. The Circuit Court of Appeals reversed the judgment of the lower court, saying:

"It must be accepted, therefore, as the established doctrine, that where a statute confers a new right, which by the terms of the act is enforceable by suit only within a given period, the period allowed for its enforcement is a constituent part of the liability intended to be created, and of the right intended to be conferred. The period prescribed for bringing suit in such cases is not like an ordinary statute of limitations, which merely affects the remedy. It follows, of course, that, if the courts of another state refuse to permit the cause of action to be sued upon during a part of the period limited by the foreign law, to that extent they refuse to give effect to the foreign law, and by so doing impair the right intended to be created. Doubtless, the courts of a state may refuse to enforce a liability unknown to the common law that has been created by the laws of a foreign state or country; but the rule of comity which prevails as between the various states of this Union requires that the courts of each state shall enforce every civil liability that may have been created by the laws of other states, for an act done or omitted within their several territorial jurisdictions, unless the liability so created and sought to be enforced is clearly repugnant to some local law, or is opposed to some well-established public policy of the state whose courts are asked to enforce it. * * * Moreover, it cannot be said that, by entertaining the suit after the lapse of two years, the laws of Minnesota would be set at naught, or any well-defined public policy of that state violated, for, in contemplation of law, the two-year limitation prescribed by the statute of that state was only intended to apply, and can only apply, to causes of action which originated in that state, and not to causes of action that originate elsewhere. We are of the opinion, therefore, that the Circuit Court erred in sustaining the motion for judgment on the pleadings."

In Dennick v. Railroad Co., 103 U. S. 11, 26 L. Ed. 439, it was held that an action might be maintained in the United States Circuit Court for the Northern District of New York by the administratrix of one who had been killed in a railroad accident in New Jersey to enforce the right of action given by the New Jersey statute. Mr. Justice Miller said:

"Wherever, by either the common law or the statute law of a state, a right of action has become fixed and a legal liability incurred, that liability may be enforced, and the right of action pursued in any court which has jurisdiction of such matters, and can obtain jurisdiction of the parties. * * * A party legally liable in New Jersey cannot escape that liability by going to New York. If the liability to pay money was fixed by the law of the state where the transaction occurred, is it to be said it can be enforced nowhere else because it depended upon statute law, and not upon common law? It would be a very dangerous doctrine to establish that, in all cases where the several states have substituted the statute for the common law, the liability can be enforced in no other state but that where the statute was enacted and the transaction occurred."

In Northern Pacific Railroad v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978, 38 L. Ed. 958, Mr. Justice White quoted, with approval, the following language from Herrick v. Minneapolis & St. Louis Railway Co., 31 Minn. 11, 16 N. W. 413, 47 Am. Rep. 771:

"But it by no means follows that, because the statute of one state differs from the law of another state, therefore it would be held contrary to the

policy of the laws of the latter state. Every day our courts are enforcing rights under foreign contracts where the lex loci contractus and the lex fori are altogether different, and yet we construe these contracts and enforce rights under them according to their force and effect under the laws of the state where made. To justify a court in refusing to enforce a right of action which accrued under the law of another state, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that for some other such reason the enforcement of it would be prejudicial to the general interests of our own citizens. If the state of Iowa sees fit to impose this obligation upon those operating railroads within her bounds, and to make it a condition of the employment of those who enter their service, we see nothing in such a law repugnant either to good morals or natural justice, or prejudicial to the interests of our own citizens."

The trend of judicial opinion is toward the establishment of a liberal rule of interstate comity in the enforcement of rights of action created by state statutes, whether they be rights ex contractu or ex delicto. If the lex loci delicti and the lex fori each creates a right of action for damages resulting from the death of a person by the wrongful act, neglect, or default of another, the courts of the forum will not be astute to find reasons for narrowing the rule of comity. In a case where, as in Slater v. Mexican National R. R. Co., 194 U. S. 120, 24 Sup. Ct. 581, 48 L. Ed. 900, there can be no recovery except by such a combination of the lex loci delicti and the lex fori as would create a right of action substantially different from that created by the lex loci delicti, jurisdiction will be declined. In that case it appears that the husband and father of the plaintiffs died from injuries received in Mexico. The action was brought in the state of Texas. The decree for damages contemplated by the Mexican law was declared to be analogous to a decree for alimony in divorce proceedings—a decree for periodical payments subject to modification from time to time as the circumstances of the widow and children should change. The law of Texas contemplates, in such a case, the award of damages in a lump sum. It was therefore held that an action for recovery would not lie in Texas. And yet, Mr. Chief Justice Fuller, in a dissenting opinion, concurred in by Justices Harlan and Peckham, considered that the Mexican method of arriving at and distributing the damages pertained to procedure or remedy, and therefore to a matter to be regulated by the law of the forum.

The decisions in some of the state courts are not in harmony with those of the federal courts. Ash v. Baltimore & Ohio R. Co., 17 Atl. 643, 72 Md. 144, 20 Am. St. Rep. 461, being one of the cases on which the defendant in the case at bar relies, is one of them. In that case the action was brought in Maryland on a statute of West Virginia, and the statutes of the two states were held to be so dissimilar that jurisdiction would be declined in Maryland. In Stewart v. Baltimore & Ohio Railroad Co., 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537, it was held, however, that the right of action created by the statute of Maryland was enforceable in the District of Columbia, notwithstanding notable differences between their statutes.

The principal purpose of the Minnesota statute is to remove the defect in the common law by giving to the personal representative of one whose death is caused by the wrongful act or omission of another

a right of action against the guilty party for the benefit of the widow and next of kin of the deceased. The New Jersey statute has the same purpose. The differences between the two statutes are minor ones, not affecting their common purpose or the domestic policy of either of the states. In my opinion, these differences furnish no reason for holding that the Minnesota statute is repugnant to the domestic policy of New Jersey.

Second. The remaining objection to the declaration is that the facts stated in it are not sufficient to confer upon the present plaintiff a right of action. It is contended that the averments of the declaration disclose no duty owing by the defendant to the plaintiff's intestate. The averments are, in substance, that the defendant is a manufacturer and vendor of cylinders "intended for and customarily and necessarily used in holding and storing gases and liquids under high atmospheric pressure, to wit, at pressures exceeding 3,600 pounds to the square inch"; that unless properly made they become, when charged, "liable to burst or explode and injure or kill any person in their immediate vicinity"; that it "became and was the duty of the defendant to use a degree of care in making and vending these receptacles proportionate to the involved danger, and not to permit any such cylinder, receptacle, or drum to be made, sold, or used for such intended purpose unless the same was properly, strongly and securely made"; that "immediately prior to February 20, 1905, the defendant made and prepared a metallic tube, cylinder, or drum, customarily and necessarily used by those for whom it was manufactured for containing, holding, and storing carbonic acid gas, or other gases or liquids, under a pressure exceeding 3,600 pounds to the square inch"; that one of these cylinders "was so carelessly, negligently, and improperly made and prepared by the defendant that it was incapable of sustaining" a greater pressure than 1,000 pounds to the square inch; that this dangerous and defective condition "arose through the negligence of the defendant in the manufacture and preparation of said cylinder, and was concealed and could not be readily discovered or ascertained by persons engaged in using it for the purpose intended"; that the cylinder thus negligently and defectively made by the defendant was by it "sold and delivered to the Bishop & Babcock Company, a corporation engaged in manufacturing and selling carbonic acid gas and other commodities at the city of St. Paul, Ramsey county, Minn., for the purpose of usage in the holding and storing of carbonic acid gas or other gases and liquids"; and that at the time the defendant made, sold, and shipped the cylinder to the Bishop & Babcock Company, the defendant "knew, or in the exercise of ordinary care should have known, of its defectiveness and imminently dangerous condition." The subsequent averments are that on and prior to February 20, 1905, Alfred Keep was an employé of the Bishop & Babcock Company; that incidental to his employment it was necessary for him "to be in the immediate vicinity of and in close proximity to" the cylinder; and that, while in the due course of his employment and in close proximity to the cylinder, and while in the exercise of due care, and while the Bishop & Babcock Company were using the cylinder for the purpose for which it was by the defendant

made and intended to be used, and while subjected to a pressure of less than one-third of its intended capacity, and without notice of its dangerous and defective condition, it exploded, without fault or negligence on the part of Keep or his employer, by reason solely of its dangerous and defective condition, inflicting injuries upon Keep which resulted in his death.

If these averments set forth any legal duty owing from the defendant to Keep, it was not a duty arising out of contract. The only contract referred to is the one between the defendant and Keep's employer. Keep was a stranger to that contract, and could acquire no rights under it. Nor are the averments based on the theory of any contractual relations between the defendant and Keep. The gravamen of the complaint is negligence, and not breach of contract, or fraud or deceit. The question, then, is not whether the defendant is guilty of a breach of contract, or suppressed facts amounting to fraud, or made representations amounting to deceit, but whether it owed to Keep the duty of reasonable care in the manufacture of the cylinder. According to the averments, which on this demurrer must be accepted as true, the cylinder was delivered to Keep's employer for use in storing gases at a pressure exceeding 3,600 pounds to the square inch. It is obvious that if, by reason of a latent defect, it was incapable of withstanding a pressure greater than one-third of 3,600 pounds to the square inch, it would become a thing highly dangerous to any one who might be near it when applied to its intended use. The law declares that a vender of poisonous drugs must carry on his business with due regard for the safety of the public, as well as his vendees. Such a rule is founded on the demands of social justice. It has often been applied to sales of things inherently dangerous. In the present case, the cylinder was not of itself a dangerous thing. It became so only when charged with gas; but it was made for the purpose of being charged with gas. Uncharged, it was a useless thing. When applied to the only use for which it was made, it exploded and killed the plaintiff's intestate. If the explosion was due solely to negligence in the manufacture of the cylinder, why should not the manufacturer respond in damages for its negligence? The authorities on the point are not harmonious; but the better doctrine, it seems to me, is that the manufacturer of a thing inherently dangerous, or of a thing which when applied to its intended use becomes dangerous, is liable in damages to any one who, without fault on his part, sustains injury which is the natural and proximate result of the manufacturer's negligence. A few cases may be referred to as illustrative of such a rule.

In Parry v. Smith, 4 C. P. Div. 325, the defendant, a gas fitter, was employed by the plaintiff's master to repair a gas meter upon his premises, and for the purpose of doing so took away the meter, and in lieu of it made a temporary connection by means of a flexible tube between the inlet pipe and the pipe communicating with the house. The plaintiff having gone, in the ordinary performance of his duty, with a light into the cellar where the meter had been, gas, which had escaped by reason of the insufficiency of the connecting tube, exploded and injured him. The jury found that the work had been negligently done,

and that the injury to the plaintiff was the result of such negligence. It was held that the defendant was liable.

In Bragdon v. Perkins-Campbell Co., 87 Fed. 109, 30 C. C. A. 567, 66 L. R. A. 924, the Circuit Court of Appeals of this circuit held that the defendant, who had manufactured and sold to the plaintiff's husband a sidesaddle, was not liable for injury sustained by the plaintiff because of negligence or want of skill in the manufacture. But the court said:

"There are cases which may seem to qualify the principle which we have discussed, but which are quite consistent with it, and which, as is pointed out in Curtin v. Somerset, 140 Pa. 70, 21 Atl. 244, have no application to such an one as that with which we are now concerned. They decide that one who deals with a thing which is inherently very dangerous, involving 'death or great bodily harm to some person, as the natural and almost inevitable consequence' of lack of care, owes to the public at large the duty of extreme caution. Such a case is Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455, which in England has been thought to go too far. * * * In our opinion Thomas v. Winchester was rightly decided; but that case, and the others which follow its lead, do not at all conflict with our present judgment. The article here in question is not, like a poisonous drug, which was the harmful agent in Thomas v. Winchester, inherently dangerous, but is, like the lamp in Longmeid v. Holiday, 6 Exch. 761, not in its nature hazardous."

In Losee v. Clute, 51 N. Y. 494, 10 Am. Rep. 638, it appears that the defendants manufactured a boiler for the Saratoga Paper Company. The testimony tended to show that it was constructed improperly and of poor iron, and that the defendants knew at the time that it was to be used in the immediate vicinity of and adjacent to dwelling houses and stores in a village, so that in case of an explosion while in use it would be likely to be destructive to human life and adjacent property. The boiler exploded and damaged the adjacent property of the plaintiff. The Saratoga Paper Company tested the boiler to its satisfaction, accepted it, and used it for three months before the explosion. In the opinion of the court it was said:

"When the boiler was accepted, they [the defendants] ceased to have any further control over it or its management and all responsibility for what was subsequently done with it devolved upon the company and those having charge of it."

It was declared that the case came within the principle that "at the most an architect or builder of a work is answerable only to his employés for any want of care or skill in the execution thereof, and he is not liable for accidents or injuries which may occur after the execution of the contract," and that the defendants owed to the plaintiff no duty whatever at the time of the explosion "either growing out of contract or imposed by law."

But Dr. Thompson, in the first volume of his work on Negligence (section 825), considers Losee v. Clute unsound in principle, and adds:

"Steam boilers are highly dangerous, even when properly constructed; but when defectively constructed nothing is more probable than that they will explode, and that the explosion will kill or injure innocent persons, and destroy adjacent property. The ignorant or unskillful construction of such a dangerous machine is a degree of negligence approaching the grade of crime; and damages ought, it should seem, to be given in such cases to any one who has sustained an injury which a due regard for the lives and property of others would have prevented."

154 F.—9

The same rule, after' an illuminating discussion of the principle on which it rests, was established for the courts of New Jersey by Chief Justice Beasley, in Van Winkle v. American Steam Boiler Company, 52 N. J. Law, 240, 19 Atl. 472. He said:

"In all cases in which any person undertakes the performance of an act, which, if not done with care and skill, will be highly dangerous to .the persons or lives of one or more persons, known or unknown, the law, ipso facto, imposes as a public duty the obligation to exercise such care and skill. The law hedges round the lives and persons of men with much more care than it employs when guarding their property, so that, in this particular, it makes, in a way, every one his brother's keeper, and therefore it may well be doubted whether in any supposable case redress should be withheld from an innocent person who has sustained immediate damage by the neglect of another in doing an act, which, if carelessly done, threatens, in a high degree, one or more persons with death or great bodily harm. Such misfeasances, if they result fatally, are indictable crimes. Where they inflict particular damage upon individuals, they should, it is conceived, be actionable. There are many decisions that appear to rest on this basis. A typical case is that of Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455."

The same principle was applied by the highest court of New Jersey to the case of Guinn v. Delaware & Atlantic Telephone Co., 72 N. J. Law, 276, 62 Atl. 412, 3 L. R. A. (N. S.) 988, 111 Am. St. Rep. 669, where a boy was killed by contact with a guy wire of the defendant company, which had become crossed with an electric light wire and charged with a deadly current of electricity; and by the Supreme Court of Minnesota, in Schubert v. J. R. Clark Co., 49 Minn. 331, 51 N. W. 1103, 15 L. R. A. 818, 32 Am. St. Rep. 559, where the defendant manufactured a stepladder of cross-grained and decayed wood, which the plaintiff could not discover, for the reason that the defective material had been covered with paint.

In Huset v. Case Threshing Machine Co., 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303, the Circuit Court of Appeals of the Eighth Circuit held a declaration to be good on demurrer in which it was averred that the defendant sold and delivered to the plaintiff's employer a threshing machine with knowledge of its dangerous defect; but, notwithstanding the averment as to the defendant's knowledge of the defect, it was said:

"It is a rational and fair deduction from the rules to which brief reference has been made that one who makes or sells a machine, a building, a tool, or an article of merchandise designed and fitted for a specific use, is liable to the person, who, in the natural course of events, uses it for the purpose for which it was made or sold, for an injury which is the natural and probable consequence of the negligence of the manufacturer or vender in its construction or·sale."

Undoubtedly, care must be taken not to extend the rule of liability in negligence cases to remote consequences. In every such case liability must be limited to injury which is the proximate and the natural result of a breach of duty owing by the defendant to the plaintiff. The rule, as above stated, thus limits it.

The demurrer will be overruled, and the defendant given 20 days after service of a copy of the order overruling the demurrer in which to plead.