## PENNSYLVANIA R. CO. v. HUMMEL.

(Circuit Court of Appeals, Third Circuit   January 21 1909.)

### No. 24.

1. RAILROADS (§ 275*) — DEFECTIVE APPLIANCES—INJURIES TO LICENSEES—NATURE OF LIABILITY.

Where a railroad company furnished a defective freight car to plaintiff's employer to be loaded, and plaintiff was injured, while endeavoring to close the car door, because of the defect, the railroad company's liability to plaintiff was one arising ex delicto and not ex contractu.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 876; Dec. Dig. § 275.

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

2. COURTS (§ 360*)—FEDERAL COURTS—PRINCIPLES OF COMMON LAW—GENERAL JURISPRUDENCE.

The federal courts determine for themselves the principles of the common law and of general jurisprudence, independent of the rules applied by the courts of the several states.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 977–979; Dec. Dig. § 360.*

Conformity of practice in common-law actions to that of state court, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

3. RAILROADS (§ 275*)—DEFECTIVE CARS—INJURIES TO LICENSEES.

Defendant railroad company furnished a car having a defective door to plaintiff's employer to be loaded. While loading the car, plaintiff and a fellow servant endeavored to close the door, which ran off its track because of the defect, and fell on plaintiff, breaking his back. *Held*, that the railroad company was bound to use reasonable care to keep the doors

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of its cars in safe operative condition, and that it was therefore liable for plaintiff's injury resulting from a breach of such duty.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 876; Dec. Dig. § 275.*]

4. RAILROADS (§ 279*) — DEFECTIVE CARS—INJURIES TO LICENSEES—PROXIMATE CAUSE.

Where the servant of a licensee, having ordered a railroad car to be loaded with goods, was injured by the falling of a door of the car on him, as he was endeavoring to close it, due to a broken lug which permitted the door to run off its track, the railroad company's negligence in failing to keep the door in a safe operative condition was the proximate cause of the injury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 901; Dec. Dig. § 279.*]

5. RAILROADS (§ 282*)—INJURY TO PERSON WORKING ON CAR—EVIDENCE—MATERIALITY—REMOTENESS.

Where plaintiff was injured by the fall of a car door as he was endeavoring to close the same at 5:30 o'clock in the afternoon, evidence as to the condition in which witnesses found the door on the succeeding morning, to the effect that there was a broken lug which appeared to have been in that condition for a considerable period and which permitted the door to run off the rail, which was also rickety, was not object⁻⁻⁻ʰˡ⁻ for remoteness.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 282.*]

6. RAILROADS (§ 282*)—OPERATION—INJURY TO PERSON WORKING ON CAR—EVIDENCE—RELEVANCY.

On an issue as to the defective condition of a car door by the fall of which plaintiff was injured, evidence that on the morning succeeding the injury the car was found with a broken lug which permitted it to run off the rail, that the break appeared to be old, and that the track was rickety, was relevant.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 282.*]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

E. J. Sellers, for plaintiff in error.

Thomas Leaming, for defendant in error.

Before DALLAS, Circuit Judge, and LANNING, District Judge.

LANNING, District Judge. This is an action in tort. In the statement of his case, Hummel, the plaintiff below, averred that on March 20, 1907, the Pennsylvania Railroad Company, the defendant below, upon an order of I. P. Thomas & Son, sent certain of its box freight cars upon one of its floats to that firm's private wharf, at Mantua Point, N. J., to be loaded with merchandise for shipment by that firm; that the plaintiff, on the day above mentioned, "occupying the position of foreman for the said I. P. Thomas & Son, was sent by his employers to their private wharf to load the aforesaid cars"; that the plaintiff, "while lawfully and carefully endeavoring to close a door on one of the aforesaid box cars, was severely and permanently injured, due to the negligence and carelessness of the defendant in sending a car whose door was in a dangerous, unsafe, and rotten condition; that the door of the said car, by reason of the dangerous and unsafe condition in which it was, fell upon, crushed, and severely injured the said Louis

E. Hummel, from which injuries he has suffered great pain and distress from thence hitherto, having received a permanent injury to his spine, bruises and contusions, and nervous shock." Damages were claimed to the amount of $35,000. The plea was not guilty, and the verdict and judgment on the trial were for the plaintiff in the sum of $7,000.

It was conceded on the argument that the liability of the defendant, if any, does not arise out of any contract. The contract set forth in the declaration was one between I. P. Thomas & Son and the defendant, and not between the plaintiff and the defendant. A statute of the state of Pennsylvania (Act May 25, 1887 [P. L. 271]) abolishes, as to procedure, the distinctions between the different actions arising ex contractu, and calls them all actions in assumpsit, and provides that the plea to a statement or declaration in any such action shall be non assumpsit. It abolishes, also, as to procedure, the distinctions between the different actions arising ex delicto, and calls them all actions in trespass, and provides that the plea in any such action shall be "not guilty." In the present case, the summons was issued in an action in trespass, the statement or declaration sets forth a cause of action arising ex delicto, and the plea is "not guilty." The action is founded, therefore, on an alleged tort, and not on a breach of contract. The case was tried on that theory. We find nothing in the charge to the jury delivered by the learned judge of the court below, or in any other part of the record of the case, that indicates, as counsel for the defendant argues, any confusion on this point. It is true that in the charge reference was made to the contractual relation between the defendant and I. P. Thomas & Son, but the cause of action was not anywhere referred to by the trial court as one based on the contract.

The most important question raised by the assignments of error is whether the defendant owed to the plaintiff the duty of reasonable care in providing cars whose doors could be safely operated. The argument of the defendant's counsel is to the effect that the lex loci delicti commissi is applicable, and that, as the accident to the plaintiff occurred in New Jersey, the law of that state is to be applied. It is not claimed that the law of New Jersey on the point under consideration is statutory. On the contrary, the New Jersey cases referred to by counsel are cases in which the common-law rule on the subject is considered and explained. The federal courts, however, determine for themselves the principles of the common law and of general jurisprudence. Smith v. Alabama, 124 U. S. 478, 8 Sup. Ct. 564, 31 L. Ed. 508; Western Union Tel. Co. v. Call Pub. Co., 181 U. S. 101, 21 Sup. Ct. 561, 45 L. Ed. 765. In their brief the defendant's counsel, after reviewing a number of New Jersey decisions, say:

"It will therefore be observed that by the law of New Jersey—the lex loci—one injured in consequence of the breach of duty which a defendant owed another pursuant to a contract, express or implied, cannot recover in a suit against such defendant, although, had such breach not occurred, the injury to the plaintiff might have been avoided."

If, as above stated, the New Jersey courts have extracted such a rule from the principles of the common law, it does not bind a federal court. But as the courts of that state adhere very rigidly to common-law

forms of procedure and common-law principles of practice, we have, in our endeavor to ascertain the true common-law rule on the subject of liability in such a case as the one now before us, carefully examined all the New Jersey authorities referred to by defendant's counsel. They are Marvin Safe Co. v. Ward, 46 N. J. Law, 19; Clyne v. Helmes, 61 N. J. Law, 358, 39 Atl. 767; Styles v. Long Co., 67 N. J. Law, 413, 51 Atl. 710, and 70 N. J. Law, 302, 57 Atl. 448; Fielders v. North Jersey St. Ry. Co., 68 N. J. Law, 343, 53 Atl. 404, 54 Atl. 822, 59 L. R. A. 455, 96 Am. St. Rep. 552; and Conklin v. Staats, 70 N. J. Law, 771, 59 Atl. 144. These cases do not support the broad conclusion of counsel. While they hold that A. cannot recover damages from B. for B.'s breach of contract with C., they do not hold that A. may not recover damages from B. for B.'s breach of duty to A. On the contrary, it was said in Marvin Safe Co. v. Ward that:

"There is a class of cases in which a person performing service or doing work under a contract may be held in damages for injuries to third persons, occasioned by negligence or misconduct connected with the execution of the contract, but these are cases where the duty or liability arises independent of the contract."

In Fielders v. North Jersey St. Ry. Co. it was said:

"A duty, the breach of which is an actionable wrong, may arise from a contract or be imposed by positive law, independent of contract. In the first case, the party to the contract only can sue; in the other case, any person may sue if he be one of the class of persons for whose benefit the duty is imposed."

In Van Winkle v. American Steam Boiler Co., 52 N. J. Law, 240, 19 Atl. 472 (a case not referred to by counsel), there is an illuminating discussion of the principle: There, the defendant entered into a contract to insure the boiler of the Ivanhoe Paper Company. The policy of insurance provided that the insurer should have the right from time to time to have access to the boiler for the purpose of examining and testing it, and that if the load on the safety valve should at any time exceed that approved by the insurer's inspector, according to his certificate, the policy should be void. It appeared by the averments of the declaration, the truth of which was admitted by the demurrer thereto, that the insurer's inspector had in fact made repeated inspections of the boiler and furnished the required certificates for the guidance of the paper company's engineer. Subsequent to these inspections, and during the life of the policy, the boiler exploded and damaged the adjoining property of the plaintiff. The court said:

"The plaintiff was the owner of the adjacent property, near to the place of this boiler. The machine, unless carefully operated, was dangerous to everything in its immediate neighborhood. No one could open his eyes and not see this situation, for, in this respect, res ipsa loquitur. Plainly, therefore, the owner of the machine, even according to the limited rule adopted by the courts of this country, was answerable to the plaintiff for the results of the careless management of such machine. And so, for a like reason, as we think, must every person be similarly responsible who participates in a substantial degree in such management, whether he be a contractor with the owner, or his servant, or even if he be a mere volunteer. The situation itself creates the duty to exercise care and skill in a high degree in every one who meddles in a matter fraught with such peril to the property of another. The defendant, the insurance company, as soon as it took part,"

practically, in the management of this machine, became subject to a duty in that particular by virtue of its contract with the Ivanhoe Paper Mill Company to conduct itself with care and skill, and, by virtue of the law, to a similar duty towards the plaintiff, and it is the violation of this latter duty which, we think, forms a legal foundation for this action. And it would seem that there is a broader ground than the one above defined on which the present case can be based. It is this: that in all cases in which any person undertakes the performance of an act which, if not done with care and skill, will be highly dangerous to the persons or lives of one or more persons, known or unknown, the law, ipso facto, imposes as a public duty the obligation to exercise such care and skill. The law hedges round the lives and persons of men with much more care than it employs when guarding their property, so that in this particular it makes in a way every one his brother's keeper, and therefore it may well be doubted whether in any supposable case redress should be withheld from an innocent person who has sustained immediate damage by the neglect of another in doing an act which, if carelessly done, threatens, in a high degree, one or more persons with death or great bodily harm. Such misfeasances, if they result fatally, are indictable crimes. Where they inflict particular damage upon individuals, they should, it is conceived, be actionable. There are many decisions that appear to rest on this basis."

The same doctrine was applied in Schulte v. United Electric Co., 68 N. J. Law, 435, 53 Atl. 204, and Guinn v. Del. & Atl. Telephone Co., 72 N. J. Law, 276, 62 Atl. 412, 3 L. R. A. (N. S.) 988, 111 Am. St. Rep. 668.

We do not think the decisions in our federal courts have established a different rule. In Savings Bank v. Ward, 100 U. S. 195, 25 L. Ed. 621, the defendant owed to the plaintiff no duty arising from contract or imposed by law. The opinion in that case, however, clearly concedes that, if an act of negligence be immediately dangerous to the lives of others, the wrongdoer is liable to the injured party whether there be any contract between them or not. So do the opinions in Goodlander Mill Co. v. Standard Oil Co., 63 Fed. 400, 11 C. C. A. 253, 27 L. R. A. 583; Standard Oil Co. v. Murray, 119 Fed. 572, 57 C. C. A. 1; Bragdon v. Perkins-Campbell Co., 87 Fed. 109, 30 C. C. A. 567, 66 L. R. A. 924; Huset v. Case Threshing Mach. Co., 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303; and Keep v. National Tube Co. (C. C.) 154 Fed. 121.

In the case in hand the defendant, the Pennsylvania Railroad Company, furnished box cars to J. P. Thomas & Son to be loaded with merchandise for shipment by Thomas & Son. The plaintiff, Hummel, an employé of Thomas & Son, in the performance of his duty as such employé, attempted with another of such employés to close the door of one of the cars. The door was a heavy, sliding one, running back and forth on an iron rail. At the bottom it was provided with two iron lugs, somewhat resembling an inverted U which fitted on the rail. The evidence showed that the part of one of these lugs which should extend down alongside the rail between it and the side of the car, and therefore not easily observable by one operating the door, was broken off, so that, when the plaintiff and his associate attempted to slide the door so as to close the car, the door ran off its track, fell on the plaintiff, and broke his back. Do these facts disclose a violation of duty from the defendant to the plaintiff? If so, it must be because when the defendant furnished its cars to Thomas & Son it owed to all per-

sons who might have work to do for Thomas & Son in loading them, or in operating their doors, the duty of reasonable care in keeping the doors in safe operative condition. The door which fell upon the plaintiff was a heavy one. The plaintiff says it generally takes two men to close such a door. The evidence not only shows that the lug was broken, but that the track was rickety. It seems to us plain that the defendant company was bound to anticipate injury to one who should attempt to operate the door in that condition, and that it did owe to all persons who, as employés of Thomas & Son, should have occasion to open or close the door, the duty of reasonable care in keeping it in a safe condition. The contract between the defendant company and Thomas & Son created the condition out of which the duty of the defendant to the plaintiff arose, but the plaintiff's right of action was founded on that duty—a duty imposed by the law—and not on the contract.

Nor do we think the cause of the accident was a remote and not a proximate one. There was no intervening duty of inspection imposed on Thomas & Son. The negligence was that of the defendant company only, and that negligence was the immediate and direct cause of the plaintiff's injury.

We think, therefore, that there was no error in the refusal of the court below to direct a verdict for the defendant. This disposes of all the assignments of error except the first, second, third, and eighth.

The eighth assignment was abandoned on the argument.

The first, second, and third assignments are based on exceptions to the admission of the testimony of three witnesses as to the condition in which they found the door, the lug, and the rail the next morning after the plaintiff received his injury. The accident occurred about 5.30 o'clock in the afternoon, just as the work for the day was closing. The witnesses were employés of Thomas & Son, and, early the next morning after the accident, examined the parts about which they testified. The only objections to the testimony were that it was too remote, and that it was not relevant to the issue. Their testimony was to the effect that the broken lug failed to perform its function of keeping the door on the rail, that the surface of the broken part of the lug was rusty, and had the appearance of having been broken for a considerable period, and that the track was rickety. The admission of such testimony was not erroneous. It was neither too remote nor irrelevant. Its probative force, in view of the time that had elapsed between the accident and the examinations, was a question for the jury. It could not have been properly excluded. O'Connell v. Pennsylvania Co., 118 Fed. 992, 55 C. C. A. 483.

The judgment will be affirmed, with costs.