## WEST JERSEY & S. R. CO. v. COCHRAN.

(Circuit Court of Appeals, Third Circuit.   August 14, 1920.)

### No. 2539.

**1. Railroads ⚖═282(9)—Refusal to direct verdict on conflicting evidence proper.**

Where the evidence was conflicting as to whether a freight car moved by the consignee was defective, and as to whether the railroad company inspected it, it was proper to refuse a directed verdict for the railroad company, if it owed to plaintiff, consignee's employé, the duty to inspect the car.

**2. Railroads ⚖═279—Failure to inspect car proximate cause of injury to employé of consignee in unloading.**

A railroad company owes the duty to inspect a freight car to an employé of the consignee, who was engaged in moving the car to the place of unloading, or in unloading it, and the breach of that duty is the proximate cause of injury resulting from a defect in the car.

**3. Railroads ⚖═279—Failure to inspect not proximate cause of injury to employé of shipper, using car in mill.**

The failure of a railroad company to inspect a car before delivering it to the consignee is not the proximate cause of an injury to an employé of the consignee, resulting from a defect in the car while it was being used by the consignee for intra-mill traffic, after the original cargo had been unloaded.

**4. Pleading ⚖═11—Pleading evidence is not proper.**

Pleading payment of demurrage to a railroad as evidence of the railroad's assumption of the duty to inspect a car is not good pleading.

**5. Railroads ⚖═275(1)—Collection of demurrage not proof carrier knew of use of car by consignee.**

Collection of demurrage by a carrier on a car is not proof that the carrier knew the car was being used by the consignee in its intra-mill traffic, so as to render the carrier liable for the unfitness of the car for such traffic.

**6. Railroads ⚖═282(9)—Evidence held to show conclusively carrier did not assume inspection of car used in intra-mill traffic.**

Where plaintiff knew that defendant kept inspectors on duty at his employer's mill to inspect cars therein, and that his employer had no inspectors, but defendant introduced evidence, which was not disputed, that its inspectors only inspected inbound and outbound cars, the evidence was conclusive that the carrier had not assumed the duty to inspect a car used by the mill in intra-mill traffic, so that a verdict should be directed for it, where plaintiff's injuries were caused by a defect in the car while so used.

In Error to the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Action by John T. Cochran against the West Jersey & Seashore Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed, and new trial ordered.

Walter H. Bacon, of Bridgeton, N. J., for plaintiff in error.

Victor Frey and Augustus Trask Ashton, both of Philadelphia, Pa., and James M. Davis, of Camden, N. J., for defendant in error.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

⚖═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
266 F.—39

WOOLLEY, Circuit Judge. E. I. Du Pont de Nemours Powder Company loaded a Mobile & Ohio freight car with nitro-cellulose at its plant at Hopewell, Virginia, and delivered it to the Norfolk & Western Railroad Company for shipment to its plant at Carney's Point, New Jersey. In its interstate journey the car passed over the roads of several intermediate carriers, and in due course came on the road of the West Jersey & Seashore Railroad Company, the terminal carrier. On May 30, 1916, this railroad company delivered the car to the Du Pont Company on its Interchange Track, located in the yard of its powder plant at Carney's Point. There, movement by the carrier ceased. From this track the Du Pont Company moved the car by its own engine and crew, and unloaded it on June 5. From that day until July 24, the Du Pont Company used the car, together with several hundred other cars similarly consigned, in its intra-mill service, without permission from anyone, yet paying the prevailing demurrage charges. During this period it was loaded and unloaded several times. On July 24, the car, loaded with cannon powder for the British Government, was being moved by the Du Pont Company in a train operated wholly by its employés, from a powder magazine to Deep Water Point, where the powder was to be transferred to a steamship. Cochran, one of the crew, in attempting to set the brake to prevent an impending collision with another car loaded with high explosives, pulled the brake wheel from the brake rod, and, falling to the ground, sustained injuries for which later he brought this suit.

Cochran brought this action, it is to be observed, not against his employer, but against that one of the several carriers engaged in the interstate shipment which had made delivery of the car to his employer, and charged it with negligence by two counts. By the first count he averred that the defendant carrier knew the Du Pont Company would cause the car to be moved and shifted about its private tracks by its employés; charged the defendant with the duty of inspecting the car before delivering it to his employer, relying upon Pennsylvania R. R. Co. v. Hummel (C. C. A. 3d) 167 Fed. 89, 92 C. C. A. 541, and McGinley v. Central Railroad of New Jersey, 235 Pa. 576, 84 Atl. 579, and alleged a breach of that duty by the defendant as the negligence which constituted the proximate cause of his injuries. The ground of action declared on by the second count, we shall consider presently. The court submitted the case to the jury on both counts. The verdict was for the plaintiff. To the judgment entered, the defendant sued out this writ of error.

[1] The questions of fact mainly controverted at the trial were whether the brake was defective; and, if so, whether the defendant had properly inspected it before delivering the car to the consignee. On these issues the defendant assigns as error the court's refusal to grant its motion for a directed verdict on the ground that no negligence on its part had been shown. The testimony on these issues was in sharp conflict and was clearly susceptible of opposite findings according as the jury believed the witnesses for one party or the other. The court therefore committed no error in submitting to the jury the question of the defective brake and of the defendant's failure to

perform its duty of inspection—if the defendant owed that duty to the plaintiff. Whether the defendant owed such duty to the plaintiff is the point on which we think the case turned and with reference to which we are of opinion the trial court fell into error.

[2, 3] If the injury to the plaintiff had occurred when, as an employé of the consignee, he was unloading the car, Pennsylvania Railroad Co. v. Hummel (C. C. A. 3d.) 167 Fed. 89, 93, 92 C. C. A. 541; Rick v. N. Y., C. & St. L. R. R. Co., 232 Pa. 553, 81 Atl. 650, or when, as such employé, he was engaged in moving the car from the delivery siding to an unloading siding, McGinley v. Central Railroad Co. of New Jersey, 235 Pa. 576, 579, 84 Atl. 579—unloading the car or moving it to an unloading track being in each instance a purpose for which the defendant had delivered the car—the duty of inspection which the defendant owed the consignee would manifestly have extended to its employé. So long as the car was held or used for one of these purposes, a breach of that duty by the defendant might with equal certainty have been the proximate cause of a consequent injury. But when the transaction of carriage had been completed by unloading the car, and the consignee had taken over the empty car for new purposes, such, as in this instance, for its own business of intra-mill transportation, there arose a new situation involving changed relations and new duties as affecting the employé of the consignee operating the car. The consignee, so using the car, then assumed the primary duty of a master to give his servant reasonably safe instrumentalities with which to work, and, such being a freight car, it owed him the duty of inspecting the car to that end. The consignee master could not in such case avoid performance of its duty of inspection because a like duty had previously devolved upon another; and if it failed in performing that duty, its failure, and not that of the other, was the negligence of which the employé should complain.

While a carrier's duty of inspection extends in some instances to an employé of a consignee, it would seem that it does so only when a duty of the consignee to exercise like care for its employé has not arisen. The Supreme Court of Pennsylvania in McGinley v. Central Railroad Co. of New Jersey, supra, and this court in Pennsylvania Railroad Co. v. Hummel, supra, expressly held the carrier in each case liable to an employé of a consignee for a breach of the duty of inspection because no intervening duty of inspection had at the time of unloading devolved upon the consignee. But when a duty of inspection by one other than the carrier afterward arises,—where, as here, a consignee takes over a car for its own purpose, a purpose entirely dissociated from that for which it had been delivered by the terminal carrier in the discharge of its business,—and the one owing that duty fails to perform it, that breach of duty, intervening between the injury and a previous breach of a like duty at one time owed by another, is the proximate cause of the injuries that follow. Fowles v. Briggs, 116 Mich. 425, 74 N. W. 1046, 40 L. R. A. 528, 72 Am. St. Rep. 537; Griffin v. Jackson L. & P. Co., 128 Mich. 653, 87 N. W. 888, 55 L. R. A. 318, 92 Am. St. Rep. 496; M. K. & T. Ry. Co. v. Merrill, 65 Kan. 436, 70 Pac. 358, 59 L. R. A. 711, 93 Am. St. Rep.

287; Glynn v. Central Railroad Co., 175 Mass. 510, 56 N. E. 698, 78 Am. St. Rep. 507; Sawyer v. Mpls. & St. L. Ry. Co., 38 Minn. 103, 35 N. W. 671, 8 Am. St. Rep. 648; 29 Cyc. 502. The proximate cause is the failure of that one who is under a duty immediately to the plaintiff. The failure of one whose duty is primarily to a third person, but not to the plaintiff, may, indeed, be a cause of the injury; but it is a remote, not a proximate, cause, and is therefore not actionable. Styles v. F. R. Long Co., 70 N. J. Law, 301, 57 Atl. 448; Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455.

It thus appears that when the Du Pont Company assumed full control over the car, put it in its intra-mill transportation service, and there used it for forty-eight days between the day it was unloaded and the day of the plaintiff's injury—a use, so far as the evidence shows, not contemplated by the defendant upon delivering the car—it assumed the duty of inspection for the protection of its employés, and the defendant's responsibility for its failure previously to inspect and discover a defect not secret ceased, Glynn v. Central Railroad Co., 175 Mass. 510, 56 N. E. 698, 78 Am. St Rep. 507; and its liability to the plaintiff also ceased—unless the defendant assumed a duty of inspection after delivery, as by the second count of his complaint the plaintiff alleged it did.

By the second count the plaintiff averred that the defendant maintained in the Du Pont Company's yard inspectors in its own employ to inspect cars it had delivered, and thereby "took upon itself the duty of keeping said cars in proper repair"; and that, as the defendant collected demurrage charges it well knew that the car in question would be moved and shifted, and that, in consequence, it became "the duty of the defendant company to properly inspect the said car * * * and continue under the duty of inspection assumed by it, to keep the same in safe condition."

[4-6] It is not clear whether the matter with reference to the collection of demurrage charges was pleaded as evidence of the defendant's knowledge of the probable uses to which the car would be put after delivery or as consideration for the defendant's alleged assumption of continued inspection. If the former, it was, of course, not good pleading, or, if well pleaded, it did not, in the absence of further evidence, establish the knowledge imputed; if the latter, it availed nothing, for there is in the record no proof that the demurrage charges sprang from a contractual relation between the defendant and the Du Pont Company with reference to the use of the car or that they were anything more than penalties paid for detention, disbursed to the party entitled to receive them. Aside from the defendant's imputed knowledge of the uses to which the car would be put after delivery or to its alleged contractual relation with the Du Pont Company arising from the payment of demurrage charges (evidence of which was lacking), the real cause of action declared on in the second count was the defendant's assumption in fact of the duty of inspection after the car had been delivered and unloaded, and the defendant's failure to perform that duty. To sustain this cause of action, the plaintiff proved that the Du Pont Company had no inspec-

tors of its own and maintained no inspection of cars within its yard; and that the defendant railroad did have inspectors and did maintain inspection within the yard. By itself, this evidence was quite sufficient to establish prima facie the defendant's assumption of the duty of continued inspection, and amply justified the court's refusal of the defendant's motion for a nonsuit. When the defendant came to its proofs, it did not controvert this testimony; it admitted it. But the defendant went further, however, and explained this testimony by showing that the inspection it maintained in the Du Pont Company yard was of cars on its Interchange Track, located just within the gates, and extended only to inbound and outbound cars, and to no other cars in the yard. To the defendant's explanation the plaintiff made no reply. This was the case before the trial judge when moved by the defendant to direct a verdict in its favor, comprising evidence differing radically from that which was before him when the motion for a nonsuit was made. That evidence, standing alone and not explained, while true, disclosed only a part of the truth; yet when supplemented and explained by evidence produced by the defendant, in no respect unreasonable or improbable, but wholly consistent, we must assume in the absence of rebuttal evidence that the whole truth was that which was shown by the defendant. When the whole evidence is considered, it is susceptible of no other inference than that the defendant's inspection in the yard, which the plaintiff had proved, was nothing more than the inspection of inbound and outbound cars on the Interchange Track. Alpha Portland. Cement Co. v. United States (C. C. A. 3d) 261 Fed. 339, 341. Certain it is, there was no evidence that would have sustained a finding that the defendant maintained inspection of cars after it had delivered them to the Du Pont Company on its Interchange Track and after the Du Pont Company had taken them over in its own business. It is this later inspection that the plaintiff charges the defendant with assuming, and out of which, if assumed, a duty arose from the defendant to the plaintiff. In failing to prove that the defendant assumed such inspection, the plaintiff failed to prove that the defendant owed him a duty of inspection, and, accordingly, he failed to prove his case under the second count.

Being of opinion that the trial court fell into error in refusing the defendant's motion to instruct the jury to render a verdict in its favor on both counts, Miller v. West Jersey & Seashore Railroad Co., 79 N. J. Law, 499, 76 Atl. 973, we direct that the judgment below be reversed and a new trial had in a manner not inconsistent with this opinion.

The decision in this case was made after the resignation of Judge HAIGHT.